# CHARLESTON.

## MOREHEAD v. HORNER.

Submitted September 14, 1887.—Decided November 26, 1887.

SUBROGATION—PAYMENT OF JUDGMENT—SUBJECTION OF REALTY—
LOSS OF LIEN—RELEASE—STATUTE OF LIMITATIONS.

By an executory contract between A. and B., the former bound himself to convey to the latter, upon the payment of the purchase-money, certain real estate. Subsequently B. conveyed said real estate to C., reserving in the deed a lien to indemnify A. against certain judgments, which B. was then primarily bound to pay; afterwards A. conveyed the legal title to said real estate to B., reserving a lien in the deed for his indemnity against said judgments; the legal title is never conveyed to C. In a suit by A. to subject the said real estate to the payment of the amount he was compelled to pay to satisfy said judgments, held :

    I. A. was entitled to subject said real estate in the hands of C. to such payment.

    II. A.'s right to do so was not lost or impaired by the fact that after B. had conveyed to C. he released B. from all liability for said judgments, nor because at the time he instituted his suit said judgments had become barred by the statute of limitations, the lien of A. depending upon the instrument reserving it, and not upon said judgments.

*W. L. Cole* and *W. D. Miller* for appellant.

*J. A. Hutchinson* and *J. B. Jackson* for appellee.

SNYDER, JUDGE :

Suit in equity, commenced December 30, 1882, in the Circuit Court of Wood county, by J. L. Morehead against R. E. Horner and others, to subject certain real estate to the payment of a debt alleged by the plaintiff to be a lien thereon. The cause was subsequently transferred to the Circuit Court of Harrison county, which latter court, by its decree, entered September 28, 1886, dismissed the bill, and the administrator of the plaintiff (the plaintiff having died before the final decree) has appealed from said decree to this Court.

This is a branch of the case of *Johnson* v. *Young,* 20 W. Va. 614. The opinion of the Court in that case shows fully

the most of the facts appearing in the record in the case now
before us.   The facts, so far as it is necessary to refer to them
in order to decide the questions presented in this appeal, are
as follows :   J. L. Morehead and James Y. Horner made a
written contract, dated January 3, 1860, by which Horner
sold to Morehead 138 acres of land in Wood county, at the
price of $70.00 per acre, and agreed to convey said land by
deed, with general warranty of title, upon the payment of
$6,000.00 of the purchase-money ; and in part payment for said
land Morehead agreed to convey, with general warranty of
title, to Horner, at the price of $2,000.00, a house and lot in the
city of Parkersburg, known as the one half of the lot No.
43 in said city.   The said 138 acres of land had been pur-
chased by said James Y. Horner from his son, J. W. Horner,
who had for some time been the owner.   During the time
said J. W. Horner was the owner of said land several judg-
ments had been recovered and duly docketed in Wood
county against the firm of Horner & Johnson, composed of
the said J. W. Horner and J. B. Johnson, in favor of various
persons, and these judgments remained due and unpaid.
Before said James Y. Horner acquired the legal title to said
lot 43 in Parkersburg, he and his wife, by deed dated April
25, 1865, conveyed his equitable title in said lot to his son,
the said J. W. Horner, as trustee, and in trust for Mary
Horner, the wife of said J. W. Horner, in consideration of
mutual love and affection and one dollar in hand paid, free
from the debts of her husband, " subject only to the condi-
tion that if there are any judgments that are against said
trustee which will be a lien on the land  that the parties of
the first part sold to J. L. Morehead, that then there is a
special lien retained to said Morehead on this house and lot,
to indemnify him against said judgment liens or any liability
that may be against said land."  This deed was not recorded
until October, 1865.   The said James Y. Horner and More-
head on September 7, 1865, entered into another written
contract, in which, after reciting that it has been ascer-
tained, since the aforesaid contract of January 7, 1860, was
made, that there are judgments against J. W. Horner and
Horner & Johnson against which the said Morehead desires
some indemnity, and that said Morehead is bound by his

contract to convey by deed to said James Y. Horner the said house and lot No. 43 in Parkersburg, it provides that "the said Morehead may retain a lien upon the face of said deed to indemnify him against any loss or damage by reason of the judgments aforesaid against said J. W. Horner and Horner & Johnson." In pursuance of this contract, on September 8, 1865, Morehead and wife conveyed to James Y. Horner the said house and lot No. 43, in which, after reciting the existence of the aforesaid judgments against J. W. Horner and Horner & Johnson, the deed declares "that a lien be and the same is hereby saved and reserved upon said property hereby conveyed to indemnify him, the said Morehead, against the said judgments and against any loss or damages that may be occasioned to him, the said Morehead, his heirs or assigns, by reason of any prior liens upon the land so purchased by him from the said James Y. Horner founded upon said judgments or any of them, against the said J. W. Horner or said Horner & Johnson, and to compensate the said Morehead, so far as the property thereby conveyed shall avail for the purpose, for any loss which he may at any time be subject to by reason of said judgments, or any of them, the lien hereby reserved to said Morehead to subsist and continue upon the property hereby conveyed until all liability of the said 138 acres of land purchased by said Morehead from said James Y. Horner as aforesaid, to the liens of said judgments or any of them, shall have wholly ceased and been determined." During the year 1866, after these contracts and conveyances had been executed, the owners of the judgments above referred to were threatening to enforce their judgments against the said 138 acres of land; and thereupon Morehead purchased the said judgments, paying therefor about $1,300.00, which was about one third less than their face value, had the same assigned to him by the owners, and subsequently caused executions to be issued thereon against the defendants therein. Before anything was realized on said executions, J. B. Johnson, the partner of J. W. Horner, obtained an injunction to stay their collection and have the same declared released or satisfied as to him. In that cause it was shown that in September, 1857, the partnership of Horner & Johnson had been dissolved,

and by an agreement then entered into between them Horner took the stock of goods, etc., then on hand and agreed to pay all the debts and liabilities of the firm. It was finally determined in that cause that by said agreement of dissolution J. W. Horner became the principal, and said Johnson merely his surety, for the payment of said judgments, and that Morehead, standing in the shoes of J. W. Horner, and being also the owner of said judgments, had in a court of equity no right to collect said judgments or any part of them from said Johnson. The facts disclosed in said suit, as well as the scope and extent of the final decision thereof, are fully shown in the opinion of this Court in *Johnson* v. *Young*, 20 W. Va. 614. By a further contract made September 6, 1866, between said James Y. Horner and Morehead, the latter released the former from "all liabilities that may rest upon him, Horner, by reason of the judgments docketed against J. W. Horner in Wood county, except a lien retained on a certain house and lot on Market street, conveyed by James Y. Horner to J. W. Horner, trustee, which said lien was and is retained for the benefit and protection of said Morehead." Upon these facts the appellees contended that because the aforesaid executory contract of January 3, 1860, bound Morehead to make to James Y. Horner a deed for the house and lot in Parkersburg, with conveyance of general warranty, upon the payment of the purchase-money, that therefore, when said Horner conveyed this house and lot to J. W. Horner, trustee for his wife, by the deed of April 25, 1865, the latter became a full purchaser of the property, and neither he nor Mrs. Horner,—and especially the latter,—could be affected by the subsequent contract between James Y. Horner and Morehead made September 7, 1865, in which it was agreed that Morehead should retain a lien upon said property to indemnify him against the judgments operating as liens upon the 138 acres of land. This would not be true, even if no express lien had been retained in the deed of April 25, 1865, from James Y. Horner for the benefit of Mrs. Horner. At the time James Y. Horner made this latter deed he had simply an equitable title to the house and lot; he had only an executory contract for the legal title which remained in the vendor,

Morehead. The law is well settled that the purchaser of an equitable title can never claim the rights of a *bona fide* purchaser. The simple fact that his vendor has no legal title is of itself sufficient to give him notice that he is purchasing an imperfect title and to deprive him of the character of a *bona fide* purchaser and the protection which the law accords to such purchaser. *Poe* v. *Paxton*, 26 W. Va. 607; *Richards* v. *Fisher*, 8 W. Va. 55; *Coles* v. *Withers*, 33 Grat. 186; *Vattier* v. *Hinde*, 7 Pet. 252, 271. Here Morehead retained the legal title to the house and lot. In such case the equitable vendee, James Y. Horner, could not possibly d⁻ anything to impair the rights of Morehead or his security. 1 Jones Mortg. § 227. But in this case the very instrument under which J. W. Horner, trustee, and Mrs. Horner assert the only title or claim they have, that is, the deed of April 25, 1865, expressly reserves a lien in favor of Morehead to indemnify him against these judgment liens. It is claimed, however, that this reservation is too vague and indefinite to operate as notice to the grantee, and that it is void for uncertainty. This deed refers to the fact that the grantors had conveyed other land to Morehead, and then provides that, if there are any judgments due from J. W. Horner, which are liens upon said land, a special lien is retained on the house and lot conveyed to indemnify said Morehead against said judgments or any liability against said land. This is plainly sufficient to notify the grantee of the security intended to be given. It is not essential that the deed should of itself contain a description of the debt or liability for which the lien is reserved. The nature and amount of the debt or liability may be expressed in terms so general that the parties as well as subsequent purchasers must look beyond the deed, to ascertain both the existence and amount of the debt or liability. *Id certum est, quod certum reddi protest.* 1 Jones Mortg. § 343; Wade, Notice, § 329; *Honore's Ex'r* v. *Bakewell*, 6 B. Mon. 67; 43 Amer. Dec. 147. It is also contended that the lien could not be reserved in favor of Morehead, who was no party to the deed, but only in favor of James Y. Horner, the immediate grantor. That such lien may be retained in favor of a

third party is well settled. *Johnson's Adm'r* v. *Billups*, 23 W. Va. 685; *Burdett* v. *Clay*, 8 B. Mon. 295.

It is further insisted, that Morehead by becoming the owner of the judgments and also the 138 acres of land upon which they operated as liens, released J. B. Johnson, one of the judgment debtors, and thereby deprived Mrs. Horner, if compelled to satisfy these judgments, of her right of substitution or recourse against said Johnson; and having thus impaired this right of substitution he has in equity destroyed his claim for indemnity against the land conveyed to Mrs. Horner. If the house and lot conveyed to Mrs. Horner had been secondarily instead of primarily liable for the indemnity of Morehead, the position here asserted would prevail, but the fact is this house and lot is by the contract of the parties made primarily and solely liable for such indemnity. It is therefore, wholly immaterial who, or what secondary security, Morehead should release. Mrs. Horner or the house and lot being primarily bound to Morehead, she could under no circumstances have any right of substitution against any one or anything; and consequently she could not be affected or prejudiced by the release of such secondary security. It is finally claimed that the judgments under which the plaintiff claims are barred by the statute of limitations. It is not pretended, however, that said judgments were not in full force in 1865, at the time the deed was made to the trustee for Mrs. Horner in which the lien for indemnity was retained in favor of Morehead. The lien here relied upon is that retained in the deed, and not the lien of the judgment. In *Wayt* v. *Carwithen*, 21 W. Va. 516, this Court held that "the right to enforce the lien of an equitable mortgage is not lost by the lapse of time, or barred by the statute of limitations, until such time has elapsed as would bar relief upon the instrument creating such lien— the dignity and character of the lien depending upon the nature of the instrument creating it, and not upon the antecedent debt or lien intended to be revived or preserved." The lien retained here to indemnify Morehead is in the nature of a vendor's lien, and was not, therefore, barred at the time this suit was instituted.

For these reasons, I am of opinion that the decree of the

70

Circuit Court should be reversed, and the cause remanded for further proceedings in accordance with the views expressed herein.

REVERSED. REMANDED.