# CHARLESTON.

### JONES v. BLANKENSHIP et al.

Submitted January 30, 1917.   Decided February 6, 1917.

1. MORTGAGES—*Vendor and Purchaser—Vendor's Lien—Validity—Priority.*

   A vendor's lien, expressly retained in his deed to indemnify the grantor against any loss he may sustain by reason of the failure of title to land, conveyed to him by his grantee, is valid, and has priority over subsequent judgment and trust deed liens. (p. 543).

2. JUDICIAL SALES—*Vendor's Lien—Enforcement—Fund.*

   Where it appears a suit is pending to determine the title to the land, against the loss of which such lienor is indemnified, the court can not properly disburse the fund arising from a sale of the land affected by such lien, until the termination of the suit and ascertainment of the lienor's loss, if any.   (p. 544).

3. EQUITY—*Process to Support Judgment.*

   It is error to decree affirmative relief upon the petition or answer of a defendant, against a co-defendant, without his appearance thereto, or service of process issued thereon upon him.   (p. 544).

Appeal from Circuit Court, Logan County.

Suit in chancery by H. C. Jones against James Blankenship, Jr., and others, to enforce judgment lien against the lands of the defendant James Blankenship, Jr.   Decree for defendant United States Coal & Oil Company, and plaintiff appeals.

*Reversed and remanded.*

*Chafin & Bland,* for appellant.

*B. A. Devol, Auxier, Harman & Francis,* for appellee.

WILLIAMS, JUDGE:

H. C. Jones brought this suit in chancery to enforce judgment liens against the lands of the defendant, James Blankenship, Jr.   Defendant failing to appear in obedience to process duly served, the bill was taken for confessed, and the cause referred to a commissioner to ascertain and report what lands he owned; the liens thereon with their piorities, and

by whom held; whether his land would rent for enough in five years to pay off the liens, and any other matters pertinent to the suit. The commissioner reported that defendant owned the surface of two tracts of land on Trace Fork of Island Creek in Logan county, one containing 188-½ acres and the other 4 acres; a number of judgment and trust deed liens on the same, and by whom owned; and that the land was not of sufficient rental value to pay them in five years. He also reported that the United States Coal & Oil Company, a corporation, by virtue of a written option executed by defendant and his wife on the 13th of October, 1913, duly acknowledged and recorded on the 17th of October, 1913, giving it the right, on or before the 13th of December, 1913, to purchase the aforesaid land at the price of $25.00 per acre, payable when a deed therefor should be delivered, had become a binding contract for the purchase of said land, by virtue of notice, duly given, of its election to take the land, and that said contract was prior to all other liens, except one judgment in favor of J. B. Blankenship for $292.69.

The land had been conveyed to defendant by plaintiff, by deed dated the 19th of February, 1913, the consideration, mentioned in the deed, being $2,600 cash. On the same day defendant conveyed to plaintiff a tract of 103 acres of land, the consideration therefor not being made to appear in the record. In the first named deed plaintiff made the following reservation:

"The grantor hereby reserves a vendors lien on the property hereby conveyed to secure him against any loss that may be sustained on account of the loss of title or failure of title to the land conveyed by Julia A. Blankenship and James Blankenship to H. C. Jones Exr. &c. by deed dated the 19th day of February 1913, and not yet of record, said land being 103 acres, situate on Copperas Mine Fork."

And the commissioner reported, that a suit was then pending, which involved the title to the 103 acre tract, but that there was no evidence of the amount secured by said vendor's lien, and, therefore, he held it was not such a lien as affected the rights of the other lienors. Jones excepted to the report, and the court overruled his exception, and decreed the con-

tract of purchase by the U. S. C. & O. Co. was prior to all the other liens, except the J. B. Blankenship judgment, and decreed that, unless it should pay off that prior judgment, and the balance due on its contract of purchase to the general receiver of the court, within a specified time, the land should be sold; and appointed a special commissioner to execute the decree.

Plaintiff has appealed and assigns two errors: First, the refusal of the court to decree his vendor's lien to be a lien superior to all others reported; and second, granting relief to the U. S. C. & O. Co. on its petition without defendant's appearance thereto, or service of process thereon upon him.

Respecting the first assignment, the failure of plaintiff's lien to show the amount for which it was retained, or that any amount would ever certainly become due, was not sufficient reason for rejecting it. The first point of the syllabus in *Knott* v. *Manufacturing. Co.,* 30 W. Va. 790, defines an equitable lien as follows:

"Every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund therein identified, a security for a debt or other obligation, or whereby the party promises to convey, assign, or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property."

That definition is repeated in language almost identical, in point 4 of the syllabus in *Fidelity Ins. &c. Co.* v. *Shanandoah Valley R. R. Co.,* 33 W. Va. 761. The lien was not retained to secure the payment of a certain sum of money, or to secure an indefinite sum, certainly to become due, but only to indemnify plaintiff against a possible loss, for which his grantee would be liable to him. The amount of such loss, or whether there would certainly be any loss at all, was not then ascertainable. A suit was then pending in which that matter would be determined. Mortgages and trust deeds given to protect persons against such contingencies are almost invariably sustained by the courts. Why, therefore, may not a grantor,

in order to avoid the circuitous method of taking from his grantee a mortgage or deed of trust to indemnify himself, retain a lien, for the same purpose, in his deed of conveyance? There certainly is no good reason for distinguishing between the two methods of creating such lien, so far as it concerns its validity. A lien retained to indemnify the grantor against judgments, is held to be valid. *Moorehead* v. *Horner,* 30 W. Va. 548. The maxim: *"Id certum est quod certum reddi potest,* applies to such cases. The pendency of the suit, involving the title to the 103 acres, sufficiently shows the materiality of plaintiff's lien; and the result of that suit will determine the contingency, and render the amount of plaintiff's lien ascertainable, provided he suffers any loss thereby. If he should lose all, or only some part of the land, the amount of his lien could be ascertained according to the price he had agreed to pay defendant for the land. A lien retained to secure the faithful performance of a contract for maintenance and support of the grantor, or even of a third person, is held to be valid. *Johnson's Admr.* v. *Billups,* 23 W. Va. 685. It has also been held, even where no lien is expressly retained, if it appears from the conveyance itself the maintenance and support was to be furnished on the land conveyed, an equitable charge or lien on the land was thereby created. *McClure* v. *Cook,* 39 W. Va. 579. The amount of plaintiff's lien is just as certain of ascertainment as were the liens for support, in the cases cited.

Plaintiff does not object to the sale of the land, but complains only of the rejection of his lien. He is entitled to a lien, for his indemnity, upon the proceeds of sale in preference to all other liens reported, and to have the fund set apart and held for his protection, until the contingency is determined by the pending suit to test his title to the 103 acres of land. Until then the court can not apply any part of the proceeds to the other and subsequent liens, but may direct that it be loaned out at interest, until plaintiff's loss, if any, is determined. It should then be applied, first to the satisfaction of plaintiff's lien, and next to the discharge of the other liens decreed, in the order of their priorities.

Respecting the second assignment, it is unnecessary to de-

termine whether the failure of the U. S. C. & O. Co. to have process issued on its petition and served on the defendant James Blankenship, Jr., is such an error as would entitle plaintiff, who is the only appellant, to a reversal. It is certainly error affecting said Blankenship, because the decree gives a co-defendant affirmative relief against him, on its petition, although he did not appear and was not summoned to answer said petition. It is error to grant affirmative relief to one co-defendant against another, upon the prayer of his answer or petition, without giving such other an opportunity to be heard in respect thereto. *Dudley* v. *Buckley,* 68 W. Va. 730; *Woodruff* v. *Douglass,* 46 W. Va. 657; and *Goff* v. *Price,* 42 W. Va. 385. Although this error may not affect appellant adversely, still it should be corrected for the protection of said Blankenship and the purchaser of the land under the court's decree, whether such purchaser be the petitioner or a stranger.

In so far as the decree denies relief to appellant and enforces the contract of sale to the U. S. C. & O. Co., without notice to defendant Blankenship, and directs the proceeds to be applied to the payment of other ascertained liens, before the amount of plaintiff's lien has been determined and provided for, it will be reversed, and in all other respects it will be affirmed, with costs to appellant against the United States Coal & Oil Company, and the cause remanded for further proceedings.

*Reversed and remanded.*