# CHARLESTON.

CARY C. HINES, ADMR. v. ELWOOD D. FULTON *et al.*

Submitted October 25, 1922.   Decided October 31, 1922.

1.   ASSIGNMENTS—*Assignment of Chose in Action Fixes Equitable Title in Assignee, Although Amount Not Definitely Determined.*

     An assignment of a chose in action, or a part thereof, even though the amount of the same is not definitely determined, vests equitable title thereto, or to the part so assigned, in the assignee. (p. 212).

2.   SAME—*Assignment by Debtor to Creditor of Sufficient Amount of Chose in Action to Satisfy Debt Passes Equitable Title to Such Amount; Assignment of Chose in Action to Satisfy Debt Not Invalid if Amount Capable of Ascertainment.*

     An assignment by a debtor to his creditor of a sufficient amount of a chose in action due him to satisfy the amount of his then existing debt, when the same is ascertained, and

which is in dispute, passes the equitable title to the creditor
to such part of the chose in action as may be necessary to
satisfy the debt when the same is fixed and determined. If
the indebtedness to secure which, or to pay which, the asssign-
ment is made, actually exists at the time of the assignment,
the same will not be rendered invalid because the parties do
not agree on the amount thereof, such amount being capable
of ascertainment by a court of competent jurisdiction. In
equity that is certain which is capable of being made certain.
(p. 212).

3.   EQUITY—*Bill Not Dismissed for Laches Where Plaintiff Was
     Prosecuting Suit Against Defendant in Another Court.*

     The plaintiff's bill will not be dismissed because of laches,
     where it appears that he was vigorously prosecuting a suit
     to vindicate his rights against the defendant in another court
     during all of the time that elapsed between the accrual of
     the cause of action and the institution of the suit sought to
     be barred by laches.   (p. 212).

Appeal from Circuit Court, Braxton County.

Suit by Cary C. Hines, administrator, against Elwood D.
Fulton and others. From an order sustaining a demurrer
to the bill, plaintiff appeals.

*Reversed; Demurrer overruled; Remanded.*

*W. E. R. Byrne, H. L. Robinson,* and *Cary C. Hines,* for
appellant.

*Bryan, Williams & Cave,* and *Haymond & Fox,* for appel-
lees.

RITZ, JUDGE:

This suit was brought for the purpose of setting aside a
decree entered in the chancery cause of E. D. Fulton v.
Joseph Ramsey, Jr., et als., in the Circuit Court of Braxton
county, upon the ground that said decree was a fraud upon
the rights of the plaintiff in this suit. A demurrer to the
plaintiff's bill and amended bill was sustained, and he prose-
cutes this appeal.

The facts giving rise to the litigation are fully set up in
the bill and amended bill. In the year 1901 William Cren-
nell, Jr., was a mining engineer living in the State of Pennsyl-
vania, and the defendant Elwood D. Fulton was a lawyer

and speculator also living in Pennsylvania. Crennell had some acquaintance with coal properties in West Virginia, and believed that money could be made in buying and selling these properties. Being without capital himself, he negotiated with Fulton, and the result of these negotiations was that he and Fulton entered into a contract by which they agreed to acquire coal interests in West Virginia for the purpose of investment and resale. It was understood that Crennell would make all of the investigations and examinations and procure the contracts for the purchase of the property, and Fulton would furnish any funds necessary to pay the expense of procuring such properties, and upon sale thereof the profits arising therefrom were to be divided equally between the parties. A large number of properties were acquired by Crennell and Fulton under this arrangement. The title to all of these properties was taken in the name of Fulton. They were resold to various parties, principally to the Little Kanawha Syndicate, represented by the defendants Joseph Ramsey, Jr., George J. Gould and William E. Guy as managers. A disagreement arose between Fulton and the managers of the Little Kanawha Syndicate as to the amount remaining unpaid by that syndicate for the lands purchased. A large amount had been paid to Fulton by the syndicate, but he was still claiming something over three hundred thousand dollars as the balance due. This claim was contested, or at least it was denied that the syndicate owed that large an amount. In order to settle this controversy, Fulton instituted a suit in equity in the Circuit Court of Braxton county, West Virginia, having for its purpose the specific execution of the contract made by him for the sale of these lands to the Little Kanawha Syndicate. Prior to the institution of this suit the syndicate had sold some of these lands to other parties and corporations, and these parties were all made defendants to that suit. The purpose of the suit was to have the amount remaining unpaid ascertained and a sale of the lands decreed in satisfaction thereof.

In 1903 Crennell called upon Fulton for a settlement of their matters under the contract. Up to this time, while

there had been large profits realized from the resale of the lands acquired by Crennell in Fulton's name, Fulton had never accounted to Crennell for any part of these profits. When this demand was made upon him for an accounting he repudiated the contract and denied that Crennell had any interest in the transaction, notwithstanding the contract between him and Crennell was in writing, and was signed by him. Crennell thereupon instituted suit in the Court of Common Pleas of Fayette County, Pennsylvania, against Fulton for his share of the profits realized in their joint adventure, and at the same time also instituted suit in the Circuit Court of Braxton County for the same purpose, and in this suit he set up the fact that he was a partner of Fulton's and had equal interest with Fulton in the claim for purchase money against the Little Kanawha Syndicate, and made the members of that syndicate parties to his bill, and also attached other funds belonging to Fulton, as well as other lands situate in Braxton County. These suits were brought in the year 1903. A part of the property attached by Crennell consisted of a judgment in favor of Fulton against T. Marcellus Marshall for the sum of $16,645.31. It was claimed by Fulton that he had assigned this judgment to his attorney, Wm. E. Haymond, and he desired that the same be released from the lien of Crennell's attachment, so that the amount thereof might be paid to Haymond. Crennell agreed to release the attachment against this judgment upon condition that Fulton assign to him a sufficient amount of the claim which he was asserting against the Little Kanawha Syndicate to pay the claim asserted by him against Fulton, and in order to accomplish this purpose Fulton, on the 18th day of February, 1910, executed a paper purporting to assign so much of the claim asserted by him against the Little Kanawha Syndicate as might be necessary to satisfy any judgment or decree secured against him by Crennell. Inasmuch as this paper is the basis of this suit, and the propriety of the court's ruling depends upon the proper construction thereof, we quote the same at length. "ASSIGNMENT. Whereas, a suit in equity has been instituted and is pending in the Circuit Court of

Common Pleas of Fayette County, Pennsylvania, in the name of William Crennell, Jr., plaintiff, against Elwood D. Fulton, defendant, to recover certain moneys for claims set forth in the amended bill of complaint filed in said suit, and another suit in equity has been instituted by the said William Crennell, Jr., plaintiff, against the said Elwood D. Fulton and others, defendants, and is pending in the Circuit Court of Braxton County, West Virginia, to recover the claims set forth in the bill filed therein, which latter claims embrace the same which are involved in the first mentioned suit, and in the said last mentioned suit an attachment was sued out by the said Crennell against the property and claims of the said Fulton and upon the order of attachment T. Marcellus Marshall was designated as being indebted to or having in his possession property and claims belonging to the said Fulton, and was summoned to answer and has filed his answer in the said Circuit Court of Braxton County, whereby it appears that the said Marshall is indebted by decree of the Circuit Court of the United States for the Northern District of West Virginia, at Parkersburg, pronounced on the ____ day of ____, 19__, against him in favor of the said Fulton, and that the amount of the decree is claimed by W. E. Haymond by reason of an assignment claimed to have been made to him by the said Fulton.

"NOW, THEREFORE, in consideration of the waiver of the said William Crennell, Jr., plaintiff, in the cause so pending in the Braxton Circuit Court, to be evidenced by an order to be entered of record in said cause, and without in any manner recognizing or conceding the claims of the said Crennell, or any of them, and reserving the right to make full defense thereto to the same extent as if this writing had not been executed, I, the said Elwood D. Fulton, hereby assign and transfer to the said William Crennell so much of the moneys claimed by me in the suit in equity instituted by me as plaintiff against Joseph Ramsey and others in the Circuit Court of Braxton County as may be sufficient to satisfy any decree that may be pronounced in favor of the said Crennell in either of the two suits aforesaid so instituted by

him, and authorize and direct the application of any money which may be recovered by me or to which I am entitled in said suit against Joseph Ramsey and others toward the satisfaction in whole or in part of any decree which may be so obtained in favor of the said Crennell; and this assignment is made with the agreement that it shall not operate to impede or in any wise obstruct or delay the prosecution of the suits aforesaid of the said Crennell or in any way prejudice his rights save and except with reference to the indebtedness so existing against the said Marshall.

"It is further understood and agreed that this writing shall in no event be so construed as to prejudice me in relation to any jurisdictional question which may be involved in the said suit instituted by the said Crennell in the Circuit Court of Braxton County.

"WITNESS my hand and seal this 18th day of February, 1910. "Elwood D. Fulton. (Seal)"

At the time this paper was executed and delivered by Fulton to Crennell, as appears from the face of the paper, a conclusion had not been reached in either of Crennell's suits against Fulton, that is to say, the one pending in Fayette County, Pennsylvania, and the one in Braxton County, West Virginia, for the purpose of determining the amount due Crennell by Fulton upon an accounting. Fulton denied any liability whatever to Crennell because of the matters set up in these suits. The parties, it appears, by mutual consent, agreed to litigate the questions in the Common Pleas Court of Fayette County, Pennsylvania, in which county both of them resided. It is shown by the bill that in this litigation Fulton refused to make disclosures required of him by the court, and that he was attached for contempt for such failure, and then on more than one occasion prosecuted writs of error to the appellate court contesting the right to so attach him. This litigation was persistently carried on, however, by Crennell until the year 1917, at which time a decree was finally entered in his favor for the sum of $142,819.55, with interest thereon from the first of May, 1916. It was further decreed in that suit that Crennell should have the right to

intervene in the suit pending in West Virginia to enforce the claim against the Little Kanawha Syndicate, and prosecute the same for his own benefit so as to secure the amount due him. The bill avers that Fulton immediately prosecuted an appeal from this decree to the Supreme Court of Pennsylvania, where the same was in the next year affirmed.

· In the suit brought by Fulton against the Little Kanawha Syndicate and others, for the purpose of enforcing the collection of the balance remaining unpaid on the lands sold by him to that syndicate, a decree was entered in March, 1909, finding that there was due Fulton the sum of $371,-922.86, and decreeing the lands to sale in satisfaction thereof. All the members of the Little Kanawha Syndicate and most of the other defendants to that suit were non residents of the State of West Virginia, and they were proceeded against by order of publication. The decree above referred to was a decree in rem against the real estate. Subsequently Fulton asked the circuit court of Braxton County to enter a personal decree against Ramsey and his associates, upon the theory that they made a personal appearance in the case, and the court below rendered such a decree. Ramsey and his associates appealed to this court from that personal decree, and the same was reversed here upon the ground that the appearance of Ramsey and his associates was only a special appearance. As before stated, Ramsey and his associates had resold these lands to various other parties, and they were proceeded against by Fulton in his suit. When Fulton executed the assignment above quoted to Crennell, Crennell immediately gave full notice thereof, not only to Ramsey and his associates, managers of the Little Kanawha Syndicate, but to all of the parties who had become interested in the lands since that time, and the bill alleges that each and all of these parties were fully and completely notified of the transfer by Fulton to Ramsey if the paper above quoted constitutes an assignment. Notwithstanding the fact that these parties all had full knowledge of Crennell's rights, in the year 1912, they made a settlement with Fulton of the controversy involved in his suit against the Little Kanawha Syndi-

cate, and in this settlement paid him, according to the allegations of the bill, about $122,000.00. The railroads that had become purchasers of this land from the Little Kanawha Syndicate, and that had as part of their purchase assumed the payment of the amount remaining due to Fulton, before paying this amount to Fulton required that indemnity be given them so that they might be protected against any claim thereafter asserted by Crennell under his assignment. When this settlement was completed, and the money paid to Fulton, he went into the Circuit Court of Braxton County and represented to the court that the claim asserted by him in his suit against the Little Kanawha Syndicate had been fully settled and satisfied, and that nothing remained to be determined in that suit, and on his motion the same was dismissed. Crennell was not a party to that suit, and did not know of its dismissal until a short time thereafter. As soon as he discovered that Fulton had dismissed that suit and represented that all of the matters there in controversy had been settled, he made a motion in the Circuit Court of Braxton County to have the order of dismissal set aside as having been procured by fraud. This motion was made at a term subsequent to that at which the decree was entered. That court refused to set aside the decree and Crennell prosecuted an appeal to this court, where the decree of the lower court was affirmed in March, 1915. *Fulton* v. *Ramsey,* 76 W. Va. 45. The denial of Crennell's motion to set aside the decree was, however, without prejudice to his right to assert his claims in any proper suit, being simply upon the ground that the Circuit Court of Braxton County could not set aside a final decree at a term subsequent to that at which it was entered. After Crennell secured the decree in Pennsylvania fixing the amount of Fulton's indebtedness to him as aforesaid, he immediately instituted this suit in the Circuit Court of Braxton County against Fulton, the members of the Little Kanawha Syndicate, and those who had purchased the lands involved from that syndicate, for the purpose of setting aside the decree of dismissal entered by Fulton in his suit against the Little Kanawha Syndicate, and others, upon the ground that

that decree was a fraud upon his rights under the circumstances. In his bill and amended, bill the facts as above detailed are set out, and all the former proceedings are exhibited. therewith. The court below sustained a demurrer to the bills and dismissed the same.

The contentions of the demurrants are that the paper writing above set forth did not confer upon Crennell, either in law or in equity, the title to any part of the debt which the Little Kanawha Syndicate owed to Fulton, for the reason that neither the amount of the debt claimed by Fulton, nor the amount of the debt claimed by Crennell from Fulton were ascertained and determined, wherefore the assignment is void for uncertainty. They further say that Crennell has been guilty of laches in bringing this suit; that the decree complained of was entered in 1912, and this suit was not brought until 1917, five years later; that if Crennell had any cause of complaint he should have asserted it before he filed his bill in this case. And it is further insisted that even though Crennell would be entitled to relief under ordinary circumstances, he is entitled to no relief here against the Little Kanawha Syndicate because its managers are all non residents of the State of West Virginia, and no personal service can be had upon them, wherefore it would be wrong to set aside the decree dismissing the suit to which they were defendants upon substituted service.

The principal contention is that the paper writing executed by Fulton to Crennell in 1910 is not in fact an assignment; that it conferred upon Crennell no title, either legal or equitable to the debt claimed by Fulton against Ramsey and his associates. This contention is based upon the fact that at the time this writing was executed and delivered, the amount of the indebtedness of the Little Kanawha Syndicate to Fulton was undetermined—in fact it was denied that any such indebtedness existed, and this is also true of the claim of Crennell against Fulton—because of which it is asserted no valid assignment could be made. Both of these claims existed in fact at the time the assignment was made. The only difficulty was that the amount had not been determined

or agreed upon. Fulton owed Crennell just as much money on the date of the assignment as he did after the court entered its decree in 1917. The litigation did not create any indebtedness, but simply fixed the amount of it. The same is true of the claim asserted by Fulton against Ramsey and his associates. There can be no doubt under the decisions but that an assignment can be made of a chose in action, even though the amount has been undetermined. All that is necessary is that it have a potential existence. *First National Bank* v. *Kimberlands,* 16 W. Va. 555-592; *Wilt* v. *Huffman,* 46 W. Va. 473; *Peugh* v. *Porter,* 112 U. S. 737; *Barnes* v. *Alexander,* 232 U. S. 117; *Sexton* v. *Kessler,* 225 U. S. 90; *Union Trust Co.* v. *Bulkeley,* 150 Fed. 510, 80 C. C. A. 328. Many more authorities might be cited for the proposition that in order to constitute an equitable assignment of a chose in action the amount thereof need not be definitely determined. If it has even a potential existence at the time of the assignment the equitable title thereto will vest in the assignee, and if the assignment in this case was for the whole of the claim of Fulton v. Ramsey, et als, there would be no trouble. The paper, however, does not purport to assign the whole of this claim, nor does it purport to assign any certain aliquot part thereof. What it does purport to transfer is sufficient thereof to pay the claim of Crennell against Fulton. Now, of course, if the claim of Crennell against Fulton was definitely determined, that is to say, the amount of it fixed, there would be no difficulty, but it is insisted that inasmuch as this claim was at the time of the assignment undetermined, in fact its validity entirely challenged, the paper was ineffective to pass any title to Crennell because it could not be immediately determined by the parties just what interest each had in the claim. It cannot be denied that if this assignment was of a certain aliquot part of the debt of Ramsey and others to Fulton it would have transferred the equitable title to that aliquot part to Crennell, notwithstanding the amount of the debt had not been fixed and determined. *McConaughey* v. *Bennett,* 50 W. Va. 172; *Wamsley* v. *Ward,* 61 W. Va. 65; *Jones* v. *Blankenship,* 79 W. Va. 541. In this

case, however, the uncertainty extends, not only to the debt out of which the payment is to be made but it likewise extends to the debt which is to be paid by the assignment. As we have seen, the fact that the debt assigned is uncertain does not affect the validity of the assignment, so long as the chose in action has either an actual or a potential existence, and we are not able to see any reason why the uncertainty of the debt secured or paid by the assignment should render it invalid, which would not exist with equal force because of the uncertainty of the debt assigned. Both of these debts had an actual existence at the time the assignment was made. The indebtedness of Ramsey and his associates to Fulton had all been created before that time, and the fact that they were disputing the amount thereof cannot affect Fulton's right to assign the chose in action. Likewise, Fulton owed Crennell the same amount when he made the assignment that he does now. The fact that he denied his just obligation does not have the effect of destroying it. Ordinarily, in equity, it is held that that is certain which is capable of being made certain. The assignment in this case purports to transfer and set over to Crennell sufficient of the debt of Fulton against Ramsey to pay Crennell's debt against Fulton, and it directs the application of that fund to the payment of Crennell's debt. We are now asked to say that the parties accomplished nothing by this deliberate transaction. The paper on its face shows that the amount of both of these obligations was contested, and it refers on its face to the particular suits in which the amount of Crennell's claim against Fulton is being litigated. This paper amounts to no more and no less than a direction to Ramsey and his associates to pay to Crennell the amount of Crennell's claim against Fulton when the same should be ascertained. The fact that Fulton's debtor could not at that time make application of the fund can make no difference. It was his duty to either retain this fund until the parties had determined their respective interests in it, or else interplead them, and pay the fund into court to be there distributed. This was not, however, necessary in this case, because it was known to all the parties that Crennell

and Fulton then had litigation pending which was being vigorously prosecuted for the purpose of determining this exact question. We are clearly of the opinion that where the owner of a chose in action assigns such part of that chose in action as may be sufficient to pay a debt claimed against him, which debt has at the time an actual existence, the assignment is effective to confer equitable title upon his creditor to such part of the chose in action as may be necessary to pay the debt when the amount thereof is determined. There are a great many authorities cited by the appellees to the effect that the assignment must show an intention to appropriate the particular fund to the payment of the debt of the assignee, and this is undoubtedly true, but the language of the paper involved here is not at all equivocal upon that question. It not only assigns and transfers the part of the fund to which it applies, but it authorizes and directs the application thereof to the discharge of Crennell's claim.

We do not find that there is any merit in the contention that the plaintiff in this case is barred by laches. It is true the decree sought to be set aside was entered in the year 1912, and that this suit was not instituted until 1917, but it must be borne in mind that Crennell did within a very short time after the entry of the decree make a motion to vacate it, and the proceedings on that motion were pending until finally determined in this court upon appeal in 1915. During not only that time, but the two years following, vigorous efforts were being exerted by Crennell to establish the exact amount of his claim against Fulton, and he succeeded in doing this in the year 1917. He thereupon immediately brought this suit without waiting for a determination of the appeal taken by Fulton to the Supreme Cuort of Pennsylvania. None of the parties interested in this land were in any way prejudiced by the fact that Crennell delayed in bringing this suit. If he had intervened at the time he got the assignment and asked then to be made a party plaintiff, his rights could not have been determined any earlier than they were actually determined. The parties had full notice of his assignment, and they likewise had full notice that he was vigorously prose-

cuting his claim against Fulton at that time. If he had intervened in the suit of Fulton against Ramsey, the amount of this claim could not have been any more speedily determined. If Ramsey and his associates, and those claiming under him, desired to get rid of the controversy so far as they were concerned, knowing Crennell's interest in the claim as they did, they could easily have interpleaded him with Fulton, and when the amount of their indebtedness was determined paid the same into court, and been discharged, and allow the litigation thereafter to proceed between Fulton and Crennell to determine their respective interests in the fund. It is quite apparent in this case that the purpose of Fulton was to defraud Crennell in case he should succeed in getting a decree for the amount which Fulton owed him. That Ramsey and his associates, and those claiming under them, knew of Crennell's rights, there can be no question under the allegations of the bill, and by paying the money over to Fulton they were assisting Fulton in perpetrating this fraud upon Crennell. The vendees of Ramsey, while apparently willing to help Fulton in his purpose to defraud his partner, did insist that, as a condition to rendering this assistance, they should be indemnified in case Crennell should thereafter successfully assert the claim against them, and this indemnity was furnished. There can be no contention in this case of innocent parties to be injuriously affected by setting aside the decree and permitting Crennell's personal representative to prosecute the suit for his benefit. There are no innocent parties on the side of the defendant. As the record now stands, they all participated in the fraud committed upon Crennell, and if their interests are injuriously affected in any way, they are the authors of their own misfortune.

There is no merit in the contention that Crennell cannot have the decree set aside for fraud in this suit on the ground that Ramsey and his associates are non residents, and can only be reached by order of publication. They were never in the suit originally except by order of publication, and when the decree is set aside and the suit allowed to be prosecuted by Crennell's administrator they will not be in the suit

in any different attitude than they were originally, and no liability will be imposed upon them except that which existed against them at the time the suit was dismissed. They cannot complain that Crennell's administrator is allowed to assert and secure in that case rights which they knew he was fully entitled to at the time they made the settlement.

Our conclusion is to reverse the decree of the Circuit Court of Braxton County, overrule the demurrer to the bill and amended bill, and remand the cause for further proceedings.

*Reversed; Demurrer overruled; Remanded.*