## In re SOYA PRODUCTS CO., Inc.

United States District Court
S. D. New York.
May 1, 1953.

Booth, Lipton & Lipton, New York City, Harold A. Lipton, New York City, of counsel, for claimant.

Charles Gottlieb, New York City, and S. Paul Fishman, Brooklyn, N. Y. and Charles Gottlieb, New York City, on the brief, for debtor.

DIMOCK, District Judge.

This is a petition to review an order of a referee in bankruptcy denying the debtor's petition for reconsideration of a proof of claim. The referee denied the application on the ground that it would not be equitable to permit reconsideration in view of the fact that the debtor had delayed for over five years to file the petition and, in the meantime, the claimant had died. It is the correctness of that determination that is before me.

The provision of law which petitioner invoked was section 57, sub. k of the Bankruptcy Act, 11 U.S.C. § 93, sub. k, which reads as follows:

"Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed."

The first question is whether a referee's order denying reconsideration of a claim is ever reviewable. Collier says that it is not, 3 Collier on Bankruptcy, 14th Ed., § 57.23, p. 313. The reasoning of the Circuit Court of Appeals for this circuit in In re Jayrose Millinery Co., 93 F.2d 471, is so clearly to the contrary that I must reject Collier's statement. In the Jayrose case a district judge had denied what the appellate court for the purpose of argument treated as an application under section 57, sub. k for reconsideration of the allowance of a claim. A tax claim of the City of New York had been allowed but denied priority. The city had claimed that this amounted to an allowance in part only and had sought reconsideration. The Court of Appeals considered exhaustively the question whether an appeal from the District Court's denial of reconsideration of the claim was governed by section 24, sub. b or section 25 of the Bankruptcy Act as amended May 27, 1926, 44 Stat. 662, chap. 406, 11 U.S.C. §§ 47, 48. The Court of Appeals reached the conclusion that a trustee in bankruptcy had an absolute right of appeal to the Court of Appeals under section 25 from a district court's denial of a petition for reconsideration of the allowance of a claim. The possibility that the denial of such a petition was not reviewable at all was not even considered. The assumed state of facts on which the Court of Appeals based its conclusions in the Jayrose case differs from the case at bar in only two respects: (1) the Court of Appeals was considering review sought by a trustee in a conventional bankruptcy proceeding rather than sought by a debtor in a Chapter XI proceeding, and (2) the review considered was review by appeal to the Court of Appeals from a district court order denying reconsideration rather than review by petition to the district court for review of a referee's order. Neither of these differences is significant and the conclusion of the Court of Appeals in the Jayrose case is authority for the reviewability of a referee's order denying a debtor's petition under section 57, sub. k for reconsideration of the allowance of a claim.

In re Woodley Men's Shop, D.C.E.D.N. Y., 46 F.Supp. 827, aff'd. sub nom. Gold-

stein v. Wolfson, 2 Cir., 132 F.2d 624, is not to the contrary. There the trustee opposed the original allowance and after the expiration of the ten day period for appeal sought to relitigate the question by an application for reconsideration under section 57, sub. k. The application for reconsideration was denied. In the case at bar, no objection was made to the original allowance. The question was first presented to the court upon the application for reconsideration.

Since the referee's order denying reconsideration is reviewable I must pass to the merits.

The ground upon which the referee refused to reconsider the allowance of the claim was the delay of five years in moving for reconsideration coupled with the death of the claimant in the meantime. The facts are these:

Before the debtor had filed its petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq., an alleged joint meeting of its stockholders and directors was held. The validity of this meeting is in question. At the meeting compensation of $40,000 per annum was voted to one Albert F. Adair, treasurer of the corporation and the original claimant. The same meeting authorized him to draw upon the funds of the corporation. Adair thereafter withdrew for himself the sum of $37,810.21 and withdrew for a firm identified with the debtor's vice president the sum of $32,799.43.

Thereafter and on January 20, 1947, Adair brought suit in the Circuit Court of Buchanan County, Missouri, against the debtor for $43,285.04 based upon compensation for a little more than a year at $40,000 per annum and disbursements expended amounting to $2,035.04. The claim was based not only on express contract but also on quantum meruit. The debtor's property was attached.

Thereafter, and on February 4, 1947, the debtor filed its petition under Chapter XI. No receiver was appointed and the debtor became and has remained a debtor in possession.

Adair's suit in Missouri was stayed by orders of this court and on May 27, 1947, he filed a claim based upon the same demands except that the disbursements sought were only $1,714.73 making a total of $42,548.39. Although debtor let it be known that it did not consider Adair to be a creditor, it filed no formal objection and the claim was allowed.

On June 20, 1947, the debtor began a turnover proceeding in this court to obtain an order that Adair return the sum of $37,810.21 which he had withdrawn for himself. This proceeding was based upon the allegation that the meeting at which Adair was authorized to withdraw funds of the debtor was unlawful.

In addition to the turnover proceeding the debtor, in February 1949, brought an action in Missouri against the bank that had honored the checks by means of which Adair had paid himself $37,810.21 and the vice president's company $32,799.43.

On January 26, 1951, the referee delivered an oral decision in the turnover proceeding ruling that the debtor had failed to establish that Adair had possession of any part of the $37,810.21 that was the subject of the proceeding. Three days later, before an order could be entered, Adair died and, in April 1951, an order was entered by the referee dismissing the turnover proceeding on the ground that the petition had abated. In April 1952 the action against the Missouri bank was settled for $7,500. On July 3, 1952 the petition for reconsideration here involved was served.

Debtor's position is that its delay in applying for reconsideration of the allowance of Adair's claim was excused by various circumstances, among them the fact that from June 20, 1947 until January 26, 1951, three days before Adair died, it was litigating the question of the validity of the meeting which was alleged to have authorized the compensation which he was claiming. This question was being litigated, according to the debtor, in the turnover proceedings in which the debtor was seeking to establish the illegality of the meeting and thus lay a foundation for the return of the moneys drawn by Adair under the purported authority of a resolution adopted at that meeting.

The record supports the debtor's contentions that the question of the validity of the meeting was involved both in the claim for compensation filed by Adair and in the turnover proceedings and that it was actually and diligently litigated in the turnover proceedings. It would have been decided in the turnover proceedings had not the case gone off on the point that the funds were not in Adair's possession.

The debtor says that this pendency of other litigation, which involved the same parties and the same subject matter as that involved in part in the proof of claim and which could have given rise to a collateral estoppel on an issue in a contest on the proof of claim, constitutes a complete excuse for the delay which the claimant now asserts was laches. In support of this the debtor cites York v. Guaranty Trust Co. of New York, 2 Cir., 143 F.2d 503, reversed on other grounds 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079, where the plaintiff brought suit against the defendant trust company for an accounting and for breach of duty as indenture trustee. The defendant pleaded laches. It appeared, however, that the plaintiff before instituting the action had sought to intervene in another action brought for the benefit of a class. Judge Frank wrote, 143 F.2d at page 528, note 51:

"Plaintiff alleges that, when she first learned of the cause of action she tried to intervene in Hackner v. Guaranty Trust Co. That attempted intervention, although based on an erroneous theory, was enough to rebut laches."

See also to the same effect Burrows v. Interborough Metropolitan Co., C.C.S.D.N.Y., 156 F. 389; Williams v. Neely, 8 Cir., 134 F. 1, 69 L.R.A. 232; Harrison v. Rice, 78 Neb. 654, 111 N.W. 594; Hines v. Fulton, 92 W.Va. 204, 114 S.E. 684; Cox v. Montgomery, 43 Ill. 110.

■ Both the referee and the claimant make much of the point that the turnover proceedings were prosecuted by the "debtor in possession" while the objection to the claim would have been interposed by the "debtor". While neither the referee nor the claimant spell out the result of this state of affairs, I assume that the claim is that the determination in the turnover proceedings could not have constituted a collateral estoppel on the issue on the validity of the claim against the estate since the issues in the two proceedings instead of being between the same parties were in one case between Adair and the debtor in possession and in the other between Adair and the debtor. I cannot believe that the distinction, undoubtedly valid for some purposes,[1] between the debtor and the debtor in possession would have the effect of obviating the operation of the rule of collateral estoppel. Even if the corporation as debtor was not a party to the turnover proceeding which it carried on as debtor in possession it was a privy to that proceeding and as such subject to the rule of collateral estoppel. The situation in no way differs from the case of trustee and beneficiary where the beneficiary is bound by collateral estoppel of the trustee. Kent v. Lake Superior Canal, R. & Iron Company, 144 U.S. 75, 91, 12 S.Ct. 650, 36 L.Ed. 352.

■ Had it not been for Adair's death it could not have been seriously contended that the debtor's delay in moving for reconsideration of the allowance of Adair's claim would have amounted to such laches as to deprive it of its right to do so. The question seems more nearly one of estoppel than laches since I must decide whether the debtor's failure to move for reconsideration of the allowance of the claim prior to Adair's death so prejudiced the position of Adair's administratrix to support the claim that she should not thereafter be required to do so. The question really comes down to deciding who took the risk of Adair's death.

Under the circumstances of this case it can reasonably be argued that, if Adair was free to litigate the question of the validity of his claim during all of the period which is characterized as delay, the position in which his administratix now finds herself is as much due to Adair's failure to litigate the claim as to the debtor's failure to do so. The debtor never for a moment

1. See 8 Collier on Bankruptcy, 14th Ed., § 342, p. 792.

gave Adair any reason to believe that the claim would not be contested. When it was filed the debtor's counsel, in opposing Adair's objections to other claims, took the position that Adair had no standing because he was not a creditor. Thereafter the debtor vigorously prosecuted litigation in which Adair locked horns with it on the vital question of the lawfulness of the critical corporate meeting. The case is a world away from cases where one party by his actions had led another party to believe that a claim will not be opposed. It is true, however, that the debtor's omission to move for reconsideration of the allowance of the claim was a deliberate choice. Other claims that were filed at the same time as Adair's were strenuously objected to and opposed without waiting for their allowance.

The debtor says that, in addition to the desirability of waiting until the question of the validity of the meeting was determined in the turnover proceedings, there was the absolute impossibility of asserting as against Adair's claim in this proceeding the debtor's cross-claim for the moneys paid out by Adair to himself and to the vice-president's company until the amount of that cross-claim was determined. It is said that, until the turnover proceedings and the action against the bank were concluded, the net amount due from Adair could not be fixed. The amount of the cross-claim would, however, have been fixed as of the time of the filing of the petition and recoveries from other sources, insofar as they would affect the amount finally payable one way or the other, could have been dealt with by adjustments in the course of the proceedings.

■ Adair contemplated a contest over the validity of his claim just as surely as the debtor contemplated it. He also knew that the debtor was not proceeding to a determination of that ultimate issue but instead was attempting to find out the determination of a subsidiary, though important, question. Whether, under those circumstances, the debtor was under a greater duty to prosecute proceedings in which Adair could give his testimony in support of his claim than was Adair himself is a question that engaged the serious concern of the learned referee. He evidently gave great weight to the fact determined by him that Adair had been stayed by this court from proceeding with the suit in Missouri that Adair had brought upon the same cause of action as his claim in these proceedings. I agree that Adair was so stayed but the stay was ex parte and it was at all times open to Adair to move for its dissolution if he felt that the debtor's omission to move for reconsideration was prejudicing him. If he had so moved and had failed to bring about a situation which would have perpetuated his testimony, a different question would have been presented here.

■ The truth, of course, is that neither party contemplated Adair's death. It was nevertheless within the power of each party to prosecute proceedings for the purpose of effecting perpetuation of Adair's testimony. Hindsight makes it clear that that ought to have been done but I cannot agree that it was so clearly the debtor's duty that the debtor's omission to do so prior to Adair's death should deprive it of its opportunity to litigate now the question of the validity of Adair's claim.

I should notice In re Jule Motor Corporation, D.C.N.D.N.Y., 34 F.Supp. 742. There the court refused to reconsider under section 57, sub. k the allowance of a claim where the claimant had died after the time of its original allowance and before the petition for reconsideration. There were absent there, however, the important features of this case: the extensive and continuous litigation with the claimant over a vital question involved in his claim, the clear notice that the claim itself would be litigated and the pending proceeding which might afford the opportunity for the claimant to give his testimony.

The order denying the petition for reconsideration will be reversed.

Settle order on notice.