# CHARLESTON.

CARY C. HINES, *Admr. v.* ELWOOD D. FULTON *et al.*

(No. 5957)

Submitted November 15, 1927.    Decided November 29, 1927.

1. JUDGMENT—*Assignor of Judgment or Decree Deprives Himself of All Interest and Control, and Transfers to Assignee Ownership of Judgment and All Remedies Thereunder.*

   The assignor of a judgment or decree by the assignment deprives himself of all interest in and control over it, and transfers to the assignee the ownership of the judgment and all remedies thereunder.    (p. 570.)

   (Judgments, 34 C. J. §§ 986, 990.)

2.  SAME—*Judgment Debtor, After Knowledge of Assignment of Judgment, Cannot Compromise With Assignor Alone.*

A judgment debtor after knowledge of the assignment of the judgment, cannot compromise the debt with the assignor alone, and thus defeat the claim of the assignee.  (p. 570.)

(Judgments, 34 C. J. § 995.)

3.  SAME—*Assignment of Judgment or Decree Carries With it Right to Lien Created by Attachments With Right to Enforce Them Whether Mentioned or Not.*

The assignment of a judgment or decree carries with it also the right to the lien created by any and all attachments sued out and levied upon all lands or other property, with the right also to enforce such attachments whether they be specifically mentioned in the instrument of writing or not. (p. 570.)

(Judgments, 34 C. J. § 999.)

4.  ATTACHMENT—*Attachment, When Levied, and Especially After Being Carried Into Decree, Constitutes Lien Good Against All Persons With Notice; Proceeding by Attachment Partakes Somewhat Both of Proceeding in Rem and One in Personam.*

Such an attachment when levied on the property, and particularly after it has been carried into a decree, constitutes a lien upon the property attached, of which all persons dealing with the property with notice are chargeable.  Such a proceeding by attachment partakes somewhat in its nature both of a proceeding *in rem* and of one *in personam.*  (p. 571.)

(Attachment, 6 C. J. §§ 7, 520.)

5.  JUDGMENT—*Collusive Entry of Satisfaction of Judgment or Decree After Assignment Will Be Set Aside at Suit of Assignee and Suit Prosecuted in His Name For His Benefit, Regardless of Whether Judgment or Decree is in Rem, in Personam, or Both.*

An attempted settlement between the debtor and creditor of such an assigned claim, after the assignment, without the knowledge or consent of the assignee, and the payment of the amount agreed upon to the assignor, constitutes actual fraud upon the assignee and his rights, and the collusive procurement of a decree or entry of satisfaction upon the record of the judgment or decree will at the suit of the assignee be set aside, and the suit prosecuted in the name of the assignee for his benefit whether the judgment or decree be *in rem* or *in personam* or both.  (p. 571.)

(Judgments, 34 C. J. § 997.)

6. FRAUDULENT CONVEYANCES—*Suit to Set Aside Fraudulent Conveyance, Transfer, or Assignment and Charge Property With Debt Creates Equitable Lien on Property.*

In this State a suit to set aside a fraudulent conveyance, transfer or assignment of property and to charge it with a debt, creates an equitable lien upon the property so proceeded against in favor of the plaintiff.   (p. 574.)

(Fraudulent Conveyances, 27 C. J. § 828.)

7. ASSIGNMENTS—*When All Parties in Interest Are Before Court, and Their Rights Can Be Settled, Rule Against Partial Assignments Does Not Apply.*

The rule of the common law against partial assignments of claims for the protection of debtors against the splitting of claims against him is without substantial application when all parties in interest are before the court, and their rights can all be there settled.   (p. 575.)

(Assignments, 5 C. J. § 60.)

8. JUDGMENT—*After Notice to Debtor of Transfer of Judgment or Decree Against Him, Equity Will Protect Assignee's Rights; Judgment Creditor's Entry of Satisfaction After Notice of Assignment Will in Equity Be Set Aside at Suit of Assignee; After Setting Aside Entry of Satisfaction of Judgment at Suit of Assignee Court May Order Suit to Proceed for Assignee's Benefit.*

After notice to the debtor of a *bona fide* transfer of a judgment or decree against him, the rights of the assignee will be protected in equity from any and all acts of the original parties, and the entry of satisfaction on the record by the judgment creditor will at the suit of the assignee be set aside as fraudulent, and the court may order the suit proceeded with for the benefit of the assignee.   (p. 575.)

(Judgments, 34 C. J. §§ 995, 1137.)

9. SAME—*In Assignee's Suit to Set Aside Collusive Entry of Satisfaction of Decree in Rem Against Attached Property, Amount to Which He is Entitled May Be Corrected by Record of Original Decree and Be Decreed Accordingly.*

Where the claim of such assignor, carried into decree *in rem* against the property attached after assignment, has been thereafter fraudulently compromised between debtor and creditor for a sum greatly below the amount decreed *in rem* against the property, and the sum agreed upon fraudulently paid over to the assignor, the amount to which the assignee is entitled may in his suit to set aside the collusive decree

be corrected by the record of the original decree in the cause, and decreed accordingly.   (p. 575).

(Judgments, 34 C. J. § 1137.

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of Syllabi.)

Appeal from Circuit Court, Braxton County.

Action by Cary C. Hines, administrator of William Crennell, deceased, against Elwood D. Fulton and others.   From a decree for plaintiff for less than he asked, he appeals, and defendants, the Baltimore & Ohio Railway Company and the Gauley Company cross-assign error.

Modified and affirmed.

*W. E. R. Byrne, Thomas Watson* and *H. L. Robinson*, for appellant.

*Haymond & Fox* and *Bryan, Williams & Cave*, for appellees, Baltimore & O. R. Co. and Gauley Co.

MILLER, JUDGE:

This case was formerly before us upon an appeal by the plaintiff from the decree below sustaining the defendant's demurrer to the original and amended and supplemental bill, reported in 92 W. Va. 204, and on which appeal we reversed the decree below, overruled the demurrers and remanded the cause for further proceedings.

The present appeal was also allowed upon the petition of the plaintiff from the final decree of the circuit court on July 21, 1926, which brought the case on to be heard on the plaintiff's bill and amended and supplemental bill; the answer of The Baltimore & Ohio Railroad Company and Gauley Company, corporations; the plaintiff's general replication thereto; the joint and several answers of John T. Davis, Arthur Lee, Davis Elkins, C. M. Henley and Davis Trust Company, executors of the last will and testament of Henry G. Davis, deceased; Davis Elkins, Stephen B. Elkins, Jr., and Davis Trust Company, a corporation, executors of the last will and testament of Stephen B. Elkins, deceased; plaintiff's general replication thereto; upon the order of publication duly published and posted as to defendants Elwood D. Fulton, George J.

Gould, William E. Guy, Joseph Ramsey, Jr., J. T. Blair, Union Trust Company of Pittsburgh, a corporation, St. Louis Union Trust Company, a corporation, Pittsburgh & Lake Erie Railroad Company, a corporation, and Pennsylvania Company, a corporation; upon exhibits and depositions filed; the mandate of the Supreme Court of Appeals of West Virginia herein; upon former orders and decrees herein; and upon argument of counsel.

And whereon it was found that on the 2nd day of April, 1927, the plaintiff's intestate, William Crennell, Jr., had obtained a decree in the court of common pleas of Fayette county, Pennsylvania, against the defendant Elwood D. Fulton for the sum of $142,819.55, as of May 1, 1916, which was affirmed by the Supreme Court of Pennsylvania on July 31, 1918; and wherein also it was further found and decreed that on December 2, 1908, in a suit pending in the circuit court of Braxton county in which the said Fulton was plaintiff and Joseph Ramsey and others were defendants, begun by attachments levied upon said lands of the said defendants therein, obtained a decree *in rem* for the sum of $367,266.18, with interest from date and costs, and that thereafter on February 18, 1910, the said Fulton, plaintiff in said suit, had executed and delivered to said William Crennell the paper which is the basis of the present suit whereby he assigned the said Crennell so much of the moneys claimed by him in said suit against Joseph Ramsey and others as might be sufficient to satisfy any decree that might be pronounced in his favor in either of the two suits mentioned therein, namely, the suit in the court of common pleas of Fayette county, Pennsylvania, or in his suit in the circuit court of Braxton county founded on the same cause of action, in which Crennell was plaintiff and Fulton was defendant; and thereby authorized and directed the application of any money that might be recovered by him or to which he was entitled in the said suit against Joseph Ramsey and others toward the satisfaction in whole or in part of any decree which might be obtained by the said Crennell; notice of which assignment, it was further decreed, had been given to the other defendants in said suit and to the owners of the land bound by the attachments levied thereon;

and further finding and decreeing that the said Fulton without the knowledge of the said Crennell had made a settlement with the Little Kanawha Syndicate, the owners of the land subject to the lien of said attachments, by which Fulton had agreed to dismiss his said suit against Ramsey and others and to release the lien of said attachments for the sum of $122,500.00, of which sum $85,000.00 was paid to the said Fulton and $37,500.00 to his attorney, W. E. Haymond, and that on the 24th day of June, 1912, at a special term of said court without notice to the said Crennell and without his knowledge, a decree was entered dismissing said suit of Fulton against Ramsey and others, and releasing the lands therein attached from the lien of said attachments; and further that the Little Kanawha Syndicate managers and Elwood D. Fulton had on the 24th day of June, 1912, by compromise agreement reached between them made a settlement of the matters in dispute between them, and that on th 24th day of June, 1912, at a special term of the court, likewise without notice to Crennell and without his knowledge, they had procured a decree carrying into effect said compromise agreement, whereby said suit of Fulton against Ramsey and others was dismissed, also releasing the land therein attached from the lien of said attachments; and further finding that pursuant thereto said agreement and decree had been paid by the Syndicate managers at the time of said settlement in the City of New York to the said Elwood D. Fulton $85,000.00 and to his counsel $37,500.00; but adjudging furthermore that the said Syndicate managers in the making of said settlement were within their rights and were without fraud as against the said Crennell, but that under the construction of said writing of February 18, 1910, by which Fulton had assigned sufficient amount of his claim against said Syndicate to the said Crennell to satisfy Crennell's claim against him, of which they all had notice, said payment by them to said Fulton of $85,000.00 was not warranted and constituted a fraud upon the rights of the said Crennell, and that the said payment should have awaited the termination of the litigation between Crennell and Fulton and until a final judgment was rendered in favor of Crennell

against Fulton in the Pennsylvania courts, which on the 31st day of July, 1918, amounted to the sum of $142,819.55, with interest, etc. And the court by the said decree adjudged and decreed that upon this basis there should be in the hands of the managers of the Little Kanawha Syndicate as of the date thereof the sum of $125,644.16, as ascertained by the court without reference to a commissioner; and thereby it was further adjudged, ordered and decreed that the decree pronounced on June 24, 1912, in the suit of Fulton against Ramsey and others, by which the suit and attachments of the said Fulton were dismissed and discharged be set aside, and that the said Cary C. Hines, administrator of Crennell, be substituted as plaintiff in the said cause of Fulton against Ramsey and others, and that the said bill and amended and supplemental bill in this cause be treated as his bill and petition therein, and further, that the said Hines, administrator, was entitled to the sum of $125,644.16, with interest from that date, and his costs of this suit, and that the same constitute a charge against the property attached by said Fulton in this suit by virtue of the said attachments of Fulton to whose rights the said Hines, administrator, should succeed as aforesaid. And it was further decreed that W. E. R. Byrne, who was thereby appointed special commissioner for the purpose, after notice, etc., as therein provided, should make sale at public auction at the front door of the court house, of the lands upon which the said attachments were levied, as shown by the returns thereon and made a part of the record, or sufficient thereof to pay the said debt, interest and costs on a credit as therein provided.

The errors pointed out and relied upon in the petition for the appeal and in the briefs and arguments of counsel are: (1) that the finding that the surreptitious settlement between Fulton and the Little Kanawha Syndicate, and the dismissal of the suit of Fulton against Ramsey and others was not a fraud on appellant's intestate, William Crennell; (2) the finding that the interest of Crennell in the amount due from the Little Kanawha Syndicate to Fulton and assigned by him to Crennell could be limited by any agreement between the parties to which Crennell was not a party, and of which he

had no knowledge; (3) that it was error to find and decree that the interest of the plaintiff Crennell in this suit and in the security afforded by the decree *in rem* in Fulton against Ramsey is limited to the sum of $65,000.00 with interest from July 31, 1918; (4) that the court erred in finding and decreeing that Fulton had a right, not only to limit the amount of plaintiff's recovery by the agreement with the defendant, but to charge against such recovery such sum as he chose to have paid to his attorney for his services, including the service of assisting in the scheme to defraud Crennell.

The defendants, The Baltimore & Ohio Railroad Company and Gauley Company, who were served with process and filed their answer to the bill, alone have cross-assigned error to said decree as follows: "First: The Court was and is without jurisdiction of the material parties in the suit, to-wit, the Syndicate managers and Fulton. The decree setting aside the decree of June 24, 1912, is a personal decree against the Syndicate managers and against Fulton, and they are all proceeded against by publication only. Second: The evidence clearly establishes, and the court so finds that there was no actual fraud on the part of the Syndicate managers in the procurement of the decree of June 24, 1912, in Fulton's case against the Syndicate, and without actual fraud in the procurement of the decree, it is error to set the same aside. Third: The court erred in adjudging the sum of $125,644.16 in favor of the plaintiff, because the facts disclosed by the testimony and as found by the court do not warrant the ascertainment of any sum as due the plaintiff in this proceeding. Fourth: The issue made by the answer on the subject of laches, and the proof relating thereto, clearly establish that the plaintiff and his intestate were guilty of laches, and by reason thereof, plaintiff's right to proceed in this cause was barred." Adding thereto by way of comment the following: That the bill of the plaintiff in this suit is an original, independent suit, for the purpose of setting aside a final decree in another cause and is, therefore, strictly a personal action, against the Little Kanawha Syndicate managers as well as Elwood D. Fulton. The coal lands attached by Fulton in his suit were discharged from the attachment by the decree of June 24, 1912, and were, therefore, at the

time of the institution of this suit, not in the custody of the law; and this suit is, in no sense, a proceeding *in rem,* and these petitioners here claim the rights secured to them by the Fourteenth Amendment to the Constitution of the United States, as claimed and set out in their answer to the plaintiff's bill, and say that the said decree of July 21, 1926, is in violation of their rights secured to them by said Fourteenth Amendment, in this, among other particulars and things appearing, on the face of the proceeding, that it deprives them of property without due process of law.'' The errors thus assigned by appellants and appellees involve a consideration of practically the same questions, depending more or less one upon another.

The first proposition of the appellees is that the court below, and this Court on appeal, is without jurisdiction of the parties, or of the subject matter; as to the parties for want of personal process served upon them, or want of personal appearance, and as to the subject matter for want of process of attachment upon the lands attached in the suit of Fulton against Ramsey, et al., in the suit of Crennell against Fulton so as to give jurisdiction to set aside, annul, or affect in any way, the settlement between Fulton and the Little Kanawha Syndicate, or any of the signatories thereto carried into the decree of June 24, 1912, which decree, it is contended, was a personal decree not subject to be set aside or affected in any way dependent upon personal service.

We cannot accede to this proposition. Prior to Fulton's assignment to Crennell on February 18, 1910, Fulton in his suit against Ramsey by sundry decrees therein beginning with the decree of December 2, 1908, and concluding with the decree of March 18, 1909, obtained a decree *in rem,* though not *in personam,* for $371,922.86, and also a decree upon the attachments levied upon the numerous tracts of land which he had conveyed or sold to the Little Kanawha Syndicate or trustees to hold for them, and appointing a commissioner to make sale thereof in satisfaction of said decree. Of the parties participating in the alleged fradulent settlement and compromise of Fulton's suit against Ramsey, everyone had personal notice and actual notice of Crennell's rights under Fulton's assignment to him and the notice which the law

gave them that they could not settle with Fulton to Crennell's prejudice without Crennell's presence and consent. We think that the general principles of law applicable to judgments generally are applicable to the assignment of Fulton to Crennell, namely, that the assignor of such judgment or decree deprives himself of all interest and control over it and transfers to the assignee the ownership of the judgment and all remedies thereunder. The authorities collated and cited by counsel for the appellants, which we have examined, fully support this proposition. 23 Cyc., pages 1417-1425; 34 C. J. 641-645; Freeman on Judgments, Vol. 2, page 426; *King* v. *Miller,* 53 Ore. 53; *Clark* v. *Hogeman,* 13 W. Va. 718, 729; *National Bank* v. *McGraw,* 85 W. Va. 298, 311; *Fleshman* v. *Hoylman,* 27 W. Va. 728; *Hines, Admr.* v. *Fulton,* 92 W. Va. 204; *Trumbull* v. *Nicholson,* 27 Ill. 149, 151; *Vance* v. *Hickman,* 95 Ill. App. 554; *LaFitte* v. *Salisbury,* 43 Colo. 248, 95 Pac. 1005; *Guthrie* v. *Bashline,* 25 Pa. 80.

Another proposition pertinent here and equally well founded in the authorities, is that a judgment debtor (the Little Kanawha Syndicate) after knowledge of the assignment of the judgment cannot compromise the debt with the assignor alone and thus defeat the claim of the assignee. For this well established principle, we are cited to 2 Black on Judgments (2nd ed.), sec. 950; *Wardell* v. *Eden,* 2 Johnson's Cases (N. Y.), 258-9; *Welsh* v. *Mandeville,* 14 U. S. 234, 236; *Walker* v. *Felt,* 54 Cal. 386; *P. C. C. & St. L. R. R. Co.* v. *Volkert,* 58 Ohio Rep. 362, 377, 50 N. E. 924; *Laughlin* v. *Fairbanks,* 8 Mo. Rep. 367; *Howard* v. *Graybehl,* 16 Colo. C. A. 80-81; *Stoddard, Treas.* v. *Benton,* 6 Colo. 508-9; *Moorman* v. *Wood,* 117 Ind. 144.

And not only would the assignment by Fulton to Crennell of the decree *in rem* carry with it the money decree, but also his right to the lien created by the attachment sued out and levied upon the lands decreed to be sold and the right to enforce these attachments. In the language of the books: "The assignment of a debt ordinarily carries with it all liens and every remedy or security that could have been used or made available by the assignor as a means of an indemnity or payment, although they are not specifically named in the

instrument of assignment, and although the assignment is not by any instrument in writing. In the absence of any provision to the contrary, the unqualified assignment of a chose in action vests in the assignee an equitable title to all such securities and rights as are incidental to the subject matter of the assignment, and he may enforce them." 2 R. C. L. sec. 43, page 633, *et seq.,* and notes. There can be no question, we think, but that an attachment, especially when levied upon the property, and certainly after it is carried into a decree, constitutes a lien upon the property attached, of which all persons dealing with the property with notice are chargeable. *Bowlby* v. *DeWitt,* 47 W. Va. 323. In *F. Gerber Co.* v. *Thompson,* 84 W. Va. 742, we held that "A proceeding by way of an attachment partakes somewhat in its nature both of a proceeding *in rem* and one *in personam."* In some cases, as this authority holds, a judgment *in rem* is more conclusive than one *in personam,* assuming, of course, that the court has jurisdiction of the *res* by valid attachment. But it is affirmed on the principles of *Burkhart* v. *Scott,* 69 W. Va. 694; *State ex rel.* v. *O'Brien,* 89 W. Va. 634, and *State ex rel.* v. *Miller,* 82 W. Va. 490, and other cases cited, that to deny to Fulton this right to control his case and to settle it would be contrary to public policy. These cases do not support the proposition; they turn on the question of remedy at law and good faith in the transaction as between attorney and client.

A proper conclusion concerning, and disposition of, this appeal demand that we consider the real object and purpose of the present suit. Depending upon the allegations of the original and amended bills, the purpose was to set aside the settlement between Fulton and his creditors on the ground of positive fraud, involving the intention of the parties participating, to deprive Crennell of his rights in the premises, and to set aside and render ineffectual that contract and the decree procured by the same means. It would be strange indeed if the court that pronounced the decree would be without jurisdiction to set it aside and to reinstate the cause and to give the benefit thereof to the injured party. While it may be one *in personam* it is also in effect a proceeding *in rem.* The main purpose here was to effect the *res* by enforcing the

liens of the attachments. The appellees who have cross-assigned error here rely very confidently upon the apparent finding of the court below that Fulton by his assignment did not lose the control of his suit nor the right to compromise it and settle with the defendants, especially since the assignment was not of his whole claim, and that he and those who participated with him acted honestly and not fraudulently, and the appellees here say they were without notice or knowledge of the effect of the settlement until after it had been made and did not participate therein.

We do not agree with the finding of the circuit court that there was no actual but constructive fraud only involved in the transaction, and that there was no intention to deprive Crennell of any of his rights under his contract. A statement of the facts alone seems to us sufficient to establish the fact of actual fraud. All participants knew of Crennell's rights under the assignment. They wrote it *in haec verba* in their collusive contract. They had prior notice, as the evidence abundantly shows. In argument before the Court we were urgently requested to read the testimony of the witness Lawrence Greer, Esq., introduced alone as a witness on behalf of The Baltimore & Ohio Railroad Company and Gauley Company, but who represented the Syndicate managers in 1908 and thereafter and represented them in negotiating for the settlement (Judge Haymond representing Fulton) in the City of New York, where the contract was drafted and signed. He explains why he was actuated to seek out Fulton and endeavor to compromise the case, one of the principal objects being that the time might not be allowed to elapse within which the decree in favor of Fulton against the Syndicate members, which Fulton assigned to Crennell, might not by limitations be put beyond the reach of review by the non-resident defendants. While we are not disposed to question the honest intentions of Mr. Greer, we cannot overlook the fact that the contract he dictated and which was signed by the parties shows on its face an intention to wrong Crennell. We find written thereon that Fulton's consent to execute the contract involved the payment to him personally of the whole amount agreed upon, except the amount paid to his counsel, and that

he should receive it immediately, and furthermore that he and all other persons engaged must have known that no such compromise or settlement would be made under the circumstances without the presence of Crennell or his consent, and that Crennell would not be bound thereby. He does not go into detail as to how the amount of the compromise was reached, but only in a general way and which apparently ignored the facts sworn to in Fulton's bill, and were specified in the decree *in rem* which ascertained the proper amount decreed to Fulton. The agreement itself called for a bond or indemnity to the defendants in the Fulton suit and a covenant on the part of the Syndicate managers that they would prosecute or defend any suits brought or pending by Crennell to vindicate his rights. If we assume, as true the proposition contended for, that Fulton might settle and compromise his case, which we do not accept, he certainly could not do so to the detriment and wrong of Crennell, his assignee, and thereby take to himself the whole of the compromise price. It is answered that the parties to the fraudulent contract did not know and could not know that Fulton was insolvent, and that the judgment against him in favor of Crennell in Pennsylvania or in West Virginia would not be satisfied by execution or that Fulton would not voluntarily pay the same. But was Crennell bound to submit to the fraudulent contract which deprived him of his legal and equitable rights to the decree assigned to him? The point may as well be disposed of here as elsewhere perhaps. Crennell had the right to the very thing he contracted for. In their argument against his contention, counsel refer us to the recent case of *Virginia Hoge, Adm'rx.* v. *Harold M. Ward,* 104 W. Va. 284. That was a suit against Ward for damages for wrongfully releasing his vendor's lien securing one of the purchase money notes assigned to plaintiff, not to set aside and avoid the release, on equitable grounds. Whether the plaintiff in that case was damaged or not depended on whether the grantee, the makers of the note, was able to answer for the note, quite a different proposition from the one involved here. Crennell's claim arose out of his right to participate in the profits of the partnership of himself and defendant

Fulton in the purchase and sale of the coal and lands sold to the Syndicate. If defendants would defend on the ground that Fulton was able to answer for the decree in favor of Crennell, the duty rests upon them to show the facts before they can deprive him of the decree of claim assigned to him.

Further on the question of jurisdiction, it is affirmed on the authority of *Fulton* v. *Ramsey,* 76 W. Va. 45; *Harrison* v. *Walton,* 95 Va. 721; *Windsor* v. *McVeigh,* 93 U. S. 274; and *Bruff* v. *Thompson,* 31 W. Va. 16, 21, that this being another and independent suit, not the suit of *Fulton* v. *Ramsey,* the present suit cannot stand as an *in rem* suit upon the attachments in Fulton's suit. But if the plaintiff is entitled to avoid the collusive decree and reinstate the former suit and the attachments levied on the lands in that case, and to prosecute the same as we hold, that decree will avail plaintiff here, as one *in rem* to subject the lands attached to his decree against Fulton. What we held in *Fulton* v. *Ramsey et al.,* *supra,* was simply that the decree of dismissal could not be set aside on mere motion without new pleadings and process served personally or by substituted service by publication against the defendants. This remedy was pursued strictly by the present bills and process thereon. And when the relief prayed for was granted by the present decree, plaintiff was lawfully given the benefit of the decree and attachments in the former suit. *Bruff* v. *Thompson,* and *Windsor* v. *McVeigh, supra,* are nothing to the contrary. The first case by two members of the court simply held that a suit against a married woman to subject her estate in personal property without possession taken established no lien therein (per contra the third member) so as to give the purchaser thereof for value without fraud good title. But in this State the commencement of a suit to set aside a fraudulent conveyance, transfer or assignment under our practice creates a lien on the property so proceeded against. *Dent* v. *Pickens,* 59 W. Va. 274, 289, and cases cited; *Gilbert* v. *Peppers,* 65 W. Va. 355; *Murphy* v. *Fairweather,* 72 W. Va. 14; *Tuft* v. *Pickering,* 28 W. Va. 330. So that this suit being a direct attack on the fraudulent release by Fulton of his lien and his attachment created an equitable lien on the lands attached and proceeded

against and gave the court jurisdiction of the *res,* and there could have been no lack of jurisdiction in the court to give full relief.

Another contention of counsel to defeat the right claimed by appellant, is that the assignment by Fulton to Crennell, not being a complete assignment, does not constitute legal or equitable, but merely an executory, agreement between the two, because it does not amount to a relinquishment by Fulton of his control over the same, so that the holder of the funds can safely pay it to the assignee when forbidden by the assignor. The rule at common law against partial assignment of choses in action was for the benefit of the debtor that he might not be subjected to the splitting of claims against him and the demands of different creditors for the same cause of action; but that rule never did have any application where all parties in interest are convened before a court of law or equity, and their rights can all be settled there. 2 R. C. L., pp. 618-621, §§ 26-29, and citations. Nor is there any respectable authority to be found holding that a debtor and assignor of a judgment or decree can collusively enter into a fraudulent contract with his debtor to deprive his assignee of the benefits of his assignment. This proposition is *res judicata* here by the former decision in this case on the demurrer to the original and amended bills.

We believe it to be settled law everywhere that the assignor of a judgment or decree loses to his assignee all control over it, at least to the extent of the interest assigned. Here by the terms of the assignment it was of so much thereof "as may be decreed in favor of the said Crennell in either of the two suits aforesaid", referring to the suits between Crennell and Fulton in Fayette county, Pennsylvania, and in Braxton county, West Virginia, recited in the preamble of the contract of assignment. 23 Cyc. 1407; 34 C. J. 641. Notice of such an assignment must be given to the judgment debtor to protect him with respect to payment and releases or satisfaction before receiving such notice. But after notice to the debtor of a bona fide transfer of the judgment or decree, the rights of the assignee will be protected from any and all acts of the original party. 23 Cyc. 1425, 34 C. J. 645-6. In Oregon

it was affirmed that an assignee of a cause of action *pendente lite* may continue the action in the name of the assignor, and he may contest the action and prevent the assignor from dismissing it against his objection. *King* v. *Miller, supra.* And such has been the holding of this Court in *Clarke* v. *Hogeman, supra.* This holding was approved in *First National Bank* v. *McGraw, supra.* In this case it was held that the release of a judgment by the original plaintiff after assignment was still good, though released. And we find it decided that a judgment debtor after notice of the assignment cannot compromise the debt with the assignor alone so as to defeat the right of the assignee. *Wardell* v. *Eden,* 2 Johnson's Cases (N. Y.); 258-9, opinion by Chancellor Kent, holding that where the plaintiff after he has assigned a judgment to a third person and given notice to the defendant of such assignment, enters up satisfaction on the record, and entry of satisfaction is fraudulent and void, and the court may order it to be vacated. The same principle was applied in *Welsh* v. *Mandeville, supra; Walker* v. *Felt, supra,* and in the leading case of *P. C. C. & St. L. R. R. Co.* v. *Volkert et al., supra,* all involving assignments by plaintiff of parts of their recoveries to their attorneys. In the *Volkert* case the court observed that the right of the debtor to compromise with his creditors is not denied, but that it is not a right of so high a character as to override every other right which courts respect. It is there said that "the books are full of cases holding that where a debt has been assigned and the debtor has knowledge of the assignment, any attempt to settle the case with the assignor and ignore the claims of the assignee, will be held futile so far as the rights of the latter are concerned."

As already intimated, we think the circuit court erred in holding there was no actual fraud. We think the record evidences the clearest case of fraud and fraudulent intent to deprive Crennell of his lawful rights. According to our holdings, the distinguished characteristic of actual fraud is the intention to wrong the party to whom the legal duty is owing. *Tolley* v. *Poteet,* 62 W. Va. 231; *Holt* v. *King,* 54 W. Va. 441; *Dickinson* v. *C. & O. R. R. Co.,* 7 W. Va. 399. Other authorities are in accord herewith, 26 C. J. 1061-62;

*Stephens* v. *Alabama Land Co.*, 12 Ala. 450, 25 So. 995.
With notice of the fraud all others who claim the benefits of
the fraudulent deal are equally guilty. *Holt* v. *King, supra.*
So that we do not hesitate to reverse the decree below on its
finding as to the fact of actual fraud, and the holding that
the Syndicate managers were within their right in making
said settlement, and paying the money agreed upon to Fulton.

The most important question remaining is what should be
the amount of plaintiff's decree. The basis of the decree
appealed from was the $85,000.00 paid by the Syndicate
holders to Fulton with interest from July 31, 1918, the date
of the final judgment of Crennell against Fulton in Pennsyl-
vania, which was for the sum of $142,819.55. July 31, 1918,
appears to have been the date of the affirmance of that decree
in the Supreme Court of Pennsylvania, but why that date
should have been arbitrarily chosen we do not appreciate.
The decree affirmed on that date was for $142,819.55 with
interest from May 1, 1916, which we think should now fur-
nish the basis of plaintiff's recovery out of the lands attached
and ordered to be sold and for correcting the amount decreed
below. We are therefore of opinion to reverse the decree to
the extent the amount is erroneous and to correct and affirm
it so as to make it conform to the rights of plaintiff in the
premises. It will therefore be decreed that the true amount
which plaintiff is entitled to recover out of the lands attached
and ordered to be sold by the special commissioner is the sum
of $142,819.55 with interest from May 1, 1916, to July 21,
1926, the date of the decree below, amounting to the sum of
$230,418.86, with interest from the latter date, and that the
total amount of the *in rem* decree in favor of Fulton against
the Little Kanawha Syndicate managers and chargeable
against the lands attached, with interest as of the same date,
is the sum of $754,957.43, a sum greatly in excess of the sum
necessary to pay the sum so found in favor of the estate of
said Crennell. It is therefore further adjudged, ordered and
decreed that the decree in favor of plaintiff charging the
lands so attached in the Fulton suit be fixed at the said sum
of $230,418.56 instead of the sum formerly decreed, and as so

corrected as to the amount, and the date when interest shall run, the same is otherwise affirmed.

We have not overlooked the question of laches much urged. We find nothing in the record justifying such a charge. Quite the contrary.

*Modified and affirmed.*