HENRY DAVIS *et al., Managers Little Kanawha Syndicate v.* DAVIS TRUST COMPANY, *a corporation, et al, Executors of the last Will and Testament of* HENRY G. DAVIS, *deceased*

*and*

HENRY DAVIS *et al., Managers Little Kanawha Syndicate v.* DAVIS TRUST COMPANY, *a corporation, et al, Executors of the last Will and Testament of* STEPHEN B. ELKINS, *deceased*

(No. 7761)

Submitted February 13, 1934. Decided February 27, 1934.

*D. H. Hill Arnold, Brown, Jackson & Knight,* and *Bryan, Williams, Cave & McPheeters,* for plaintiffs in error.
*S. T. Spears,* for defendants in error.

MAXWELL, JUDGE:

These two cases were heard together by the circuit court of Randolph County, a jury being waived in each case. Judgments were entered for the defendants and the plaintiffs prosecute writs of error.

The following statement of the case is taken from the opinion of the circuit judge:

"These are actions in assumpsit instituted in the Circuit Court of this county on the 16th day of August, 1929, and the declaration filed on the 22nd day of August, 1929, wherein plaintiffs allege damages in the sum of $25,000.00 in each case. In each bill of particulars damages are set out in the total sum of $13,656.67.

"On December 2, 1901, an agreement in writing was entered into between George J. Gould, Joseph Ramsey, Jr., and William E. Guy as syndicate managers, first parties, and syndicate subscribers thereto, severally, second parties, which organized and formed a syndicate to which $7,705,000.00 was subscribed under the name of Little Kanawha Syndicate, for the purpose of purchasing and acquiring and to build railroads, in West Virginia and elsewhere, and to purchase coal lands in the State of West Virginia, and managing, handling and disposing of the same, and the contract provided, among other things, that the second parties, in consideration of the premises and of their mutual promises, would, from time to time on call of the syndicate managers, and to the amount of such call, or calls, make cash payments on account of their respective subscriptions to said syndicate upon ten days written notice from the syndicate managers, and for such pay-

ments a certificate would be issued certifying the amount of such payment and the interest of such subscriber in the syndicate, and the holding of a certificate would constitute such holder a party to said agreement, and that such agreement was binding on the successors, survivors, assigns and personal representatives.

"On May 26, 1902, Henry G. Davis and Stephen B. Elkins became subscribers to said syndicate in the sum of $250,000.00 and there was issued to each by the St. Louis Union Trust Company a certificate showing that they had paid it the sum of $25,295.83 and $25,316.66, respectively, in payment of 10% of their subscriptions, including principal and interest, and the declaration further charges that by reason thereof the said Henry G. Davis and Stephen B. Elkins were bound by all the terms and conditions of said agreement.

"Henry G. Davis and Stephen B. Elkins died some years ago and the parties named defendants to the two actions are the surviving executors under their wills, and it is charged that they are liable under the conditions of said agreement.

"It is charged that under the agreement the syndicate managers were given the right to appoint other suitable persons as additional syndicate managers who should possess and exercise all powers conferred upon the syndicate managers by the terms of the agreement and that after the death of Gould and Ramsey, two syndicate managers, that one James H. Grover was appointed on June 1, 1923, and acted as such until February 4, 1924, when he resigned. And further that on June 30, 1928, Henry Davis and Robert N. Hawes, plaintiffs herein, were duly appointed syndicate managers and that William E. Guy, the other syndicate manager, died on July 24, 1928.

"The declarations further charge that Henry G. Davis and Stephen B. Elkins paid all calls up to and including the call of December 30, 1903, which aggregated 70% of their subscriptions, or a total of $175,000.00 each; that distribution of the proceeds of the various sales was made to the members and that Henry G. Davis received a total disbursement of $193,250.00 and Stephen B. Elkins a like amount.

"It is further charged that it became necessary to provide additional funds for the payment of liabilities of said syndi-

cate growing out of litigation and that on November 15, 1923, William E. Guy and James H. Grover, as syndicate managers, made a written call of one per cent of the total subscription of each subscriber, and that Henry G. Davis' and Stephen B. Elkins' percentage amounted to $2,500.00 each, and on December 1, 1928, Henry Davis and Robert N. Hawes, as surviving syndicate managers, made a written call of four per cent on each of the subscribers and the call made upon Henry G. Davis and Stephen B. Elkins amounted to the sum of $10,000.00 each, and the declarations aver that such calls are made for the purpose of paying off and discharging obligations and liabilities of said syndicate and for the winding up and closing of its affairs, and the plaintiffs further charge that said calls have not been paid.

"To the declaration the defendants filed the plea of non assumpsit and several special pleas.

"Special Plea No. 1 charges that the syndicate was indebted to one Elwood D. Fulton, for something over $125,000.00; that Fulton-executed to one William Crennell, Jr., an assignment upon said syndicate and that the syndicate managers, George J. Gould and William E. Guy, disregarding the assignment, paid Fulton his claim of $125,000.00 and that the Supreme Court of this State held the Crennell assignment valid and that later the syndicate managers had to pay the sum of $130,843.74 in settlement and that this payment, together with attorney fees and expenses was the cause of the calls now sued on, and the payment by the managers, disregarding the assignment, showed that they did not use reasonable diligence to protect the interest of the subscribers to the syndicate and that the payment of Fulton was such negligence as to make the syndicate managers personally liable and that such negligence on the part of Gould and Guy was such as to make them personally liable and their estate should be proceeded against to recover.

"Special Plea No. 2 charges that the agreement of Dec. 2, 1901, does not provide for the purchase of coal lands outside the state of West Virginia and that disregarding the agreement, the syndicate managers purchased certain coal lands in the state of Ohio and charged the same against the syndicate without the authority of the subscribers and out of

the funds of the syndicate they paid about $700,000.00 for coal lands in the state of Ohio which they later sold for $65,000.00 and having made such purchase without authority the syndicate managers are personally liable to the treasurer of the syndicate.

"Special Plea No. 3 sets up the statute of limitations of ten years.

"Special Plea No. 4 sets up the statute of limitations of five years.

"Special Plea No. 5 challenges the right of Henry Davis and Robert N. Hawes to be appointed syndicate managers as they were not subscribers to the syndicate, therefore their appointment, as well as all the acts attempted to be done by them as such, were null and void.

"Plaintiffs objected to the filing of the Special Pleas, which objection was overruled with respect to Special Pleas No. 1, 2, 3 and 4, but the Court sustained plaintiff's objection to Plea No. 5 on the ground that it came too late and by order entered on the 9th day of February, 1932, the Court dismissed both suits on the ground that the syndicate agreement of December 2, 1901, does not provide for the appointment of the plaintiffs as syndicate managers because they were not subscribers to the syndicate agreement, therefore had no authority to make the assessments, and the Court sustained the motion of the defendants and struck from the record all plaintiffs' evidence and dismissed the suits. An appeal to the Supreme Court was taken from the decision of the lower court, and the Supreme Court reversed the lower court and held Davis and Hawes, as syndicate managers, were 'suitable persons' and proper plaintiffs. (113 W. Va. 43, 166 S. E. 690.)

"On December 18, 1913, a call of five per cent was made to provide funds for the discharge of certain obligations of the Little Kanawha Syndicate growing out of litigations of the Little Kanawha Syndicate instituted against the syndicate managers with reference to the purchase of certain coal properties in the State of Ohio. A circular giving detailed information accompanied the call. A new corporation was formed with the preferred and capital stock and the subscribers were entitled to certain rights thereunder. Henry G. Davis and

Stephen B. Elkins refused to pay this call and no action was ever instituted against them to collect the same.

"The call of one per cent on the 15th day of November, 1923, was for the purpose of paying expenses of the Crennell litigation. The call of four per cent on the 1st day of December, 1928, was for the purpose of paying the Crennell judgment, expenses and attorney fees.

"In the letter of December 1, 1928, to all syndicate subscribers, accompanying the call of four per cent to be paid on December 20, 1928, it is said in the first paragraph of the letter that the agreement of December 2, 1901, was for the purpose of acquiring, purchasing and disposing of at a profit, railroad properties and coal properties in the State of West Virginia, and further on it says: that the syndicate managers from time to time acquired and purchased various railroad properties and coal lands in the State of West Virginia and elsewhere.

"It is further stated in this letter that Mr. Guy made a loan of $130,843.74 so as to pay off the bond given by him and Mr. Gould to the three railroads, pending the controversy between Crennell, Fulton and the syndicate.

"On February 24, 1933, the defendants filed their Plea No. 6, wherein it is pleaded that the agreement of December 2, 1901, was for certain purposes only, namely: 'To purchase the Little Kanawha Railroad, a line of railroad extending from Parkersburg, West Virginia, up the Little Kanawha River about thirty miles, with its proper franchise, buildings, rights-of-way as now contracted and owned along the Little Kanawha River; to extend the same eastwardly; to purchase or build a railroad from Parkersburg to Zanesville, Ohio, and to purchase coal lands in West Virginia'. The plea further charges that without authority the syndicate managers purchased coal lands in the state of Ohio and growing out of these purchases, John S. Jones recovered a judgment against the syndicate managers in the state of New York for $568,999.42 with interest from January 19, 1912, and that the syndicate managers paid this judgment out of funds belonging to the syndicate subscribers, in which fund these defendants had a ratable interest, the exact amount unknown to defendants, but charge that in the year 1914 there was paid

out of these funds for said purpose the sum of $174,514.62 and further paid expenses and attorney fees in the sum of $61,493.20; and further charge that these amounts exceeded the one and four per cent calls.

"Defendants' plea further aver that there is no right or authority in the plaintiffs to make these levies or assessments by reason of the fraud on Crennell by having paid Fulton $125,000.00, and charge the syndicate managers were liable under the agreement of December 2, 1901, for 'negligence or lack of good faith' in performance of their duties under said syndicate agreement, and charge that the fraudulent acts on the part of the syndicate managers constituted such negligence and lack of good faith as to render the syndicate managers liable personally, and further aver that these defendants have the right to interpose this equitable defense. And further charge that these defendants have the right to make this defense against the present syndicate managers as they would have had against the former syndicate managers who acted fraudulently and without authority, and set up that if these defenses are not cognizable in this suit, because it being an action of law, then they ask that this cause be transferred to the equity docket of this court so that their proper defenses may be available to them.

\* \* \*

"Under the original agreement the syndicate managers had the right to purchase and sell coal lands in the State of West Va. Disregarding this limitation the syndicate managers purchased about 17,000 acres of coal lands in the Hocking Valley in the State of Ohio from a man by the name of Jones. Considerable litigation grew out of this purchase and the evidence in this case is clear that a large sum of money was recovered by Jones against the syndicate managers in a suit prosecuted in the State of New York. Jones' judgment was possibly $600,000.00 or more, and counsel fees were somewhere between $50,000.00 and $75,000.00. After this judgment was recovered the syndicate managers made a call of 5% on the subscribers to pay the same. Some of the subscribers paid the call. These defendants refused to pay and it is significant to note that no suit was ever brought against them to recover this call. The reason is obvious because the

syndicate managers had no right to invest in Ohio coal properties and could not show the right or necessity for the call, therefore would have no right of recovery against the subscribers. This is a fair deduction because no suit was ever instituted against the defendants. The exact amount of funds belonging to the syndicate which was used in the payment of the Jones' judgment is not disclosed by the evidence, but roughly speaking possibly $400,000.00 to $500,000.00 was to be used.

"In the year of 1909 Elwood D. Fulton instituted a suit against the syndicate managers claiming the right to recover $300,000.00 and attached certain property of the syndicate. Crennell claimed to be a partner of Fulton and instituted a suit against him and attached his property. While both suits were pending Fulton made an assignment to Crennell of 'so much of the money claimed in the suit brought by Fulton against the syndicate managers to pay Crennell's claim'. Crennell gave notice of his assignment to all interested parties. The syndicate managers, disregarding the assignment, made a settlement with Fulton and paid him $122,500.00."

The *Crennell* case was twice before this Court on appeal. *Hines, Adm'r.* v. *Fulton et al.,* 92 W. Va. 204, 114 S. E. 684; 104 W. Va. 561, 140 S. E. 537. On the latter appeal, there was an express finding by this Court that there was actual (not constructive) fraud on the part of Fulton and the syndicate managers in making settlement of the controversy to the exclusion of Crennell. Judge Miller, speaking for the Court, said: "We think the record evidences the clearest case of fraud and fraudulent intent to deprive Crennell of his lawful rights." That decision was rendered November 29, 1927. By the said decision the circuit court's finding of $125,644.16 in favor of Hines, Administrator of Crennell, against the syndicate property by virtue of the Fulton attachment was enlarged to the sum of $230,418.56.

In May, 1928, this claim was settled with the administrator of the Crennell estate for $192,500.00, of which amount $60,000.00 was paid by the Baltimore & Ohio and Erie Railroad Companies, who had become purchasers of certain properties of the syndicate, and the residue of $132,500.00 was paid by the syndicate. To provide funds for this payment,

William E. Guy, at that time the surviving syndicate manager, borrowed of the First National Bank in St. Louis in May, 1928, the sum of $130,500.00. He executed this note as syndicate manager and endorsed it personally.

In passing on the instant cases on their merits, the trial court held that the statute of limitations, specially pleaded by the defendants with respect to both the five-year provision and the ten-year provision thereof, is not applicable and therefore does not constitute a defense to the actions. The court was further of opinion, however, that it appears from the record that recovery is sought in these cases primarily for the purpose of reimbursing the Guy estate on account of the $130,500.00 borrowed by Guy of the First National Bank in St. Louis. The trial judge said: "Does the syndicate owe the Guy estate anything? I think not, but on the other hand I think the Guy Estate is heavily indebted to the syndicate. Mr. Guy was one of the syndicate managers who, without authority, invested in the Ohio coal properties, and who, without authority, paid out of the funds of this syndicate several hundred thousand dollars of money which belonged to these subscribers. Mr. Guy was one of the syndicate managers, who, according to the opinion of the Supreme Court of this state, practiced a fraud on Mr. Crennell, which cost the syndicate $122,500.00 which they fraudulently paid to Fulton in 1912. We must remember the agreement provides—which Ramsey, Gould and Guy had prepared—that the syndicate managers 'shall be liable for lack of good faith or failure to exercise reasonable diligence'."

We think the learned trial judge was in error in ascertaining that the money sought to be recovered by the present syndicate managers under the calls of 1923 and 1928, respectively, is primarily for the purpose of reimbursing the Guy estate. The Guy estate did not discharge the loan of the First National Bank in St. Louis. That loan has been discharged by the syndicate managers out of funds collected from syndicate subscribers who responded to the said two calls. So that instead of the funds contemplated by the said two calls being primarily for the purpose of reimbursing the Guy estate, they were primarily for the purpose of discharging the said bank indebtedness, and expenses of the managers. These expenses

are heavy, including liberal attorneys' fees and trust company remuneration. The present syndicate managers are associates of the law firm which represents them and which has heavily benefited financially from the efforts put forth to collect the 1923 and 1928 calls of the managers. This law firm has also represented the Guy estate in certain matters. But on the statement of facts thus corrected and amplified, we think the trial court was without error in its finding.

The First National Bank in St. Louis could not have proceeded against the syndicate subscribers or their estates to obtain satisfaction of said debt. It was not their liability. Then, too, the syndicate agreement expressly provided that subscribers to the syndicate ''shall be liable hereunder solely to the Syndicate Managers or their assigns * * *.'' Guy was liable personally on said debt. He had indorsed the note. The incurring of said obligation would not have been necessary but for the fraud on the part of the syndicate managers in connection with the Fulton settlement. So that, instead of the new syndicate managers, appointed by Guy in 1928 a few weeks before his death, stepping into the breach and calling upon the syndicate subscribers to make contributions to the treasury of the syndicate for the purpose of paying the First National Bank note and thereby protecting the Guy estate, the said estate should itself have borne the brunt of that situation. Guy was responsible for it, not the syndicate subscribers; and that responsibility lay not merely in the borrowing of the money but more potently in the antecedent fraudulent conduct which made the borrowing necessary.

The plaintiffs' contention that the foregoing matters may not be considered in these cases because they are law actions and not equity proceedings is not well taken. Procedure in assumpsit comprehends great liberality of defense. The matters set forth in Special Pleas Nos. 1, 2 and 6 were proper to be shown under the general issue. ''Under the practice in this state and in Virginia, it is generally understood that any defense can be made under the general issues of nil debit and non assumpsit, except the statute of limitations, bankruptcy and tender.'' *McClanahan* v. *Coal Co.*, 74 W. Va. 543, 548, 82 S. E. 752, 754. See I Chitty on Pleading (11th Am. Ed.),

p. 478; Hogg's Pleading and Forms, p. 176; Kittle on Assumpsit, p. 552; II Greenleaf on Evidence (15th Ed.), sec. 135; *Sutherland* v. *Guthrie,* 82 W. Va. 419, 96 S. E. 61; *Morgantown Bank* v. *Foster,* 35 W. Va. 357, 363, 13 S. E. 996; *Dudley* v. *Collieries Co.,* (Va.) 100 S. E. 466. In the *Dudley* case is this comprehensive statement: ''The general issue of non assumpsit on an unsealed contract is one of the broadest general issues known to our system of pleading, and it is said that anything may be shown under it except tender, bankruptcy, and the act of limitation, and that these defenses are excepted because they do not contest liability, but only that no action can be maintained therefor.''

While we concur in the trial court's finding in the particular discussed, and have no difficulty in sustaining his conclusion on that aspect of the case, we do not concur in his further finding that the statute of limitations has no application. Under our statute, Code 1931, 55-2-6, the period of limitation of action on a contract not in writing signed by the party to be charged or his agent is five years; and the limitation period where there is such signed writing is ten years. The trial court was of opinion that although the syndicate agreement does not seem to have been signed by the subscribers, Henry G. Davis and Stephen B. Elkins, the syndicate managers in signing the same must be deemed to have acted as agents for the said two subscribers, and therefore that the ten-year period of limitation is the one which is applicable. He further found that the said period must be considered as having begun to run as to each of the calls here involved from the date thereof, that is to say, November 15, 1923, and December 1, 1928, respectively; that right of action accrued on said respective dates.

Under our view of the case, it is not necessary to determine whether the five-year period or the ten-year period of limitation is applicable, for the result is the same. It will be remembered that the syndicate agreement bore date December 2, 1901. It contains this paragraph:

''Unless sooner terminated by the Syndicate Managers in their discretion, and upon notice to the Syndicate Subscribers, this Agreement shall continue in force and operation for the period of three

years from and after the first day of February, 1902, and for such further period thereafter as the Syndicate Managers in their discretion, *find reasonably necessary or advisable in the interest of the Syndicate Subscribers.*" (Italics supplied.)

Numerous calls or assessments were made by the syndicate managers in 1902 and 1903. In January, 1904, Henry G. Davis and Stephen B. Elkins each paid $25,000.00 in response to call No. 8 which had been made late in 1903. This was the last assessment to which either of those two subscribers responded. In 1906 and 1907, the subscribers received of the syndicate managers disbursements aggregating 111% of their subscriptions. That is, they received back the amounts of their investments and the equivalent of about 3½% interest thereon. So far as the record discloses, Henry G. Davis and Stephen B. Elkins had no further dealings with the syndicate. A call or assessment of 5% in 1913 (Call No. 9) on account of the purchase of coal property in the state of Ohio, was ignored by both Davis and Elkins. They were warranted in this action because, under the terms of the syndicate agreement, the managers had no right to invest in coal properties outside of the state of West Virginia. The syndicate managers abandoned the assessment of 1913 without making any effort to collect the same, so far as Davis and Elkins were concerned.

Remembering that the purpose of the agreement was not an all-time, or even a long-time, venture, but was for the brief period of three years and for such further period as seemed "reasonably necessary or advisable in the interest of the Syndicate Subscribers," there must have been some date when the right of action of the syndicate managers against subscribers began to run. It is not reasonable that a matter such as this should stand open for a quarter of a century. If the syndicate managers had the right to make the assessment of 1913, a right of action then accrued to them thereon as against the subscribers, Davis and Elkins. The conduct of the said two subscribers in ignoring the 1913 call indicated very definitely that they were not in sympathy with the then program of the syndicate managers. We do not think that the syndicate managers could circumvent this situation as to Davis and Elkins by abandoning that call and many years

648

later making additional calls. The statute of limitations is a statute of repose. Its purpose is to put an end to stale demands and not to permit persons or their estates to be harassed by claims which because of their staleness should not in good conscience be asserted. It is founded on the presumption that exists against him who has unreasonably delayed in asserting his demand.

There is no possible date on which the beginning of the running of the statute of limitations against the syndicate managers and in favor of Davis and Elkins can be placed later than the date of the ninth call, December 18, 1913; but it is not at all clear that such late date as that should be adopted. It would be very reasonable to hold that the "further period * * * reasonably necessary or advisable in the interest of the Syndicate Subscribers", following the three-year period definitely provided for by the agreement, terminated in 1907 when the repayments or distributions to the syndicate subscribers were concluded. So far as the record discloses, there was no occasion for subsequent calls or assessments on account of legitimate activities of the syndicate managers. The calls which were made subsequently were occasioned by improper conduct of the managers, namely, the fraudulent settlement with Fulton to the prejudice of the syndicate subscribers to the extent of Crennell's claim, and the unwarranted purchase of the Ohio property.

We affirm the judgment of the circuit court in each case.

*Affirmed.*